## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Shields Health Care Group, Inc. Data Breach Litigation | CIVIL ACTION NO: 1:22-cv-10901-PBS |

## PLAINTIFFS KOMAR'S AND MONETTE'S MEORANDUM IN SUPORT OF THEIR MOTION FOR APPOINTMENT OF PLAINTIFFS' INTERIM CLASS COUNSEL

**INTRODUCTION**

In this consolidated action spanning eight individual actions, Plaintiffs Tennie Komar ("Komar") and Debra Monette ("Monette"),[1] move for the appointment of Lynch Carpenter, LLP ("Lynch Carpenter") and Scott+Scott Attorneys at Law LLP ("Scott+Scott") (collectively, "Lynch/Scott"), as Plaintiffs' Interim Co-Lead Counsel, and Jason Leviton of Block & Leviton LLP as Plaintiffs' Interim Liaison Counsel.

Lynch Carpenter and Scott+Scott have substantial experience leading the most contentious data breach actions, having served together as plaintiffs' lead or co-lead counsel in *In re Equifax, Inc. Customer Data Security Breach Litig.*, 17-md-2800 (N.D. Ga.); *In re Home Depot Customer Data Sec. Breach Litig.*, 1:14-md-02583 (N.D. Ga.); *McPherson/Lyles v. American Bank Systems Inc*, 5:20-cv-01307/5:21-cv-00023 (W.D. Okla.); *Veridian Credit Union v. Eddie Bauer LLC*, 2:17-cv-00356 (W.D. Wash.); and *First Choice Fed. Credit Union v. The Wendy's Co.*, 2:16-cv-00506 (W.D. Pa.) ("*Wendy's*"). All of these cases were successfully resolved through class settlements with no objections.

Lynch/Scott proposes to use a "mentored leadership" structure to achieve the goals set forth by the Duke Law School guidelines regarding plaintiffs' leadership structures in consolidated actions.[2] Consistent with the Duke Guideline's recognition of the need to reduce the "strong repeat player dynamic" that typically exists in plaintiffs' leadership structures, in favor of creating leadership opportunities for less experienced counsel, Lynch/Scott proposes that this case be led

---

[1] *Komar v. Shields Health Care Group, Inc.*, 1:22-CV-11109 (D. Mass.) and *Monette v. Shields Health Care Group, Inc*., 1:22-CV-11131 (D. Mass.).

[2] Bolch Judicial Institute, Duke Law School, Guidelines and Best Practices for Large and MassTort MDLs, at 45-46 (2d ed., Sept. 2018) ("Duke Guidelines"), available at https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bolch.

1

by Gary F. Lynch and Elizabeth Pollock-Avery from Lynch Carpenter, and Erin Green Comite and Carey Alexander from Scott+Scott. Mr. Lynch and Ms. Comite both have significant experience leading data breach litigation. They successfully collaborated as plaintiffs' co-lead counsel in the Wendy's Data Breach litigation, where they achieved a $50 million settlement on behalf of a class of payment card issuing financial institutions and were specifically recognized by the court as having provided efficient leadership of the consolidated class litigation.[3] Ms. Pollock-Avery and Mr. Alexander are both in their first decade of practice with significant experience in data breach litigation, but have not yet had an opportunity to serve as plaintiffs' lead counsel in a consolidated action. Lynch/Scott proposes that Mr. Lynch and Ms. Comite mentor Ms. Pollock-Avery and Mr. Alexander in their leadership efforts. This proposed structure, in addition to meeting the recommendations of the Duke Guidelines, will create efficiency and reduce overall attorneys' fees.

Other courts recently have recognized the value of "leadership development" appointments in plaintiff leadership structures. *See In re: Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Litigation*, MDL 3014 (W.D. Pa.). In *Phillips,* the court appointed a ten member "leadership development committee" and mandated that its members "meaningfully participate in all phases of [the litigation] including, but not limited to, participation on committees and subcommittees, drafting master complaints, drafting and arguing briefs, participating in settlement negotiations, and preparing for and taking depositions of lay witnesses and expert

---

[3] At the final fairness hearing in *Wendy's*, the court specifically recognized the efficiency with which Mr. Lynch and Ms. Comite had managed the litigation, stating: "it's apparent to the Court that there was substantial and significant high-level work performed by counsel for the plaintiffs" and "as involved as this case was, if every case I had was as well-organized and professionally presented as this case has been, my life would be much easier." *Wendy's*, Nov. 6, 2019 Tr. at 27-28, 32 (ECF No. 194).

witnesses." Dkt. No. 395 at 11. *See also In re Robinhood Outage Litig.*, 20-cv-1626, Dkt. No. 59 at 3 (N.D. Cal. July 14, 2020) (denying motion to appoint lead counsel where proposed leadership structure included twelve men, no women, and primarily "repeat player" firms and attorneys). The leadership structure proposed here follows the recent movement of courts towards opening opportunities for attorneys who have not yet led a consolidated action like this, but does so in a way that does not sacrifice or subordinate the needs of the class, or the litigation generally, to have experienced counsel directly involved in the case.

Further, if appointed, the Lynch/Scott team intends to utilize counsel from all of the filed cases, and will delegate work to each in an efficient manner.

Consistent with the Manual for Complex Litigation, Fourth, § 10.22 (2004) ("MCL")[4] and Fed. R. Civ. P. 1 and 23(g), and for the reasons set forth herein, Plaintiffs Komar and Monette respectfully request that the Court appoint this cohesive team to steer the consolidated actions. Lynch/Scott will provide case management through the highest caliber of representation with an efficient leadership structure that is committed to maximizing the recovery on behalf of Plaintiffs and members of the proposed Class and ensuring the expeditious prosecution of this litigation, and will do so through a structure that recognizes and utilizes the value of diversity.

## BACKGROUND OF THE ACTIONS

The eight lawsuits at issue are brought on behalf of individuals who allege their personally identifiable information ("PII") was exposed as a result of an unknown actor gaining access to Defendant Shields Health Care Group, Inc.'s ("Shields") computer systems between March 7, 2022 and March 21, 2022 (the "Data Breach"). All eight actions are styled as class actions brought on behalf of nationwide classes of residents whose PII was accessed because of the Shields Data

---

[4] Available at https://www.uscourts.gov/sites/default/files/mcl4.pdf.

Breach.[5]  Certain actions also seek to represent sub-classes of residents of Massachusetts,[6] Maryland,[7] and Maine.[8]

## ARGUMENT

I. **Legal Standard**

Rule 23(g) authorizes the Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "Courts use the same qualification criteria for designating interim counsel as are used for appointing class counsel." *Trombley v. Bank of Am. Corp.*, 08-CV-456-JD, 2010 WL 4878992, at *1 (D.R.I. Dec. 1, 2010).  In appointing class counsel, the Court must consider (1) the work the applicant has done identifying and investigating claims; (2) counsel's experience in handling complex litigation and/or the types of claims at issue; (3) counsel's knowledge of the law to be applied; and (4) the resources the applicant will commit to the case.  Fed. R. Civ. P. 23(g)(1)(A). To identify "the applicant best able to represent the interests of the class," Fed. R. Civ. P. (g)(2), the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

II. **Plaintiffs Komar's & Monette's Proposed Leadership Structure Is Best Able to Represent the Interests of the Class**

Plaintiffs Komar and Monette propose a "mentored leadership" structure for this case that will efficiently manage this litigation: Gary F. Lynch and Elizabeth Pollock-Avery from Lynch Carpenter, and Erin Green Comite and Carey Alexander from Scott+Scott as Interim Co-Lead Counsel, who will serve as primary counsel for all substantive matters and be the points of contact

---

[5] *Biscan* Compl. ¶ 132; *Smith* Compl. ¶ 70; *Buechler* Compl. ¶ 33; *Diaz* Compl. ¶134; *Roach* Compl. ¶ 33; *Komar* Compl. ¶ 51; *Monette* Compl. ¶ 53; *Colby* Compl. ¶ 98.
[6] *Biscan* Compl. ¶ 132; *Smith* Compl. ¶ 71; *Roach* Compl. ¶ 33.
[7] *Buechler* Compl. ¶ 33.
[8] *Colby* Compl. ¶ 99.

with defense counsel—and one Interim Liaison Counsel, Jason M. Leviton of Block & Leviton LLP, who will coordinate with and assist Co-Lead Counsel when communicating with the Court, serve as local counsel, provide guidance regarding the Court's local practices, and support Co-Lead Counsel as the need arises.

The Lynch/Scott team offers youth and gender diversity, coupled with deep experience in data breach litigation. "Research shows that having a mix of experienced and new players enhances creativity and innovation, leads to better decisionmaking and problem solving, and promotes discussion of novel concepts raised by those who historically have not been in leadership." Duke Guidelines at 46. Thus, for the reasons detailed further below, the Lynch/Scott proposed leadership structure will be best able to represent the interests of the class

### A. Lynch/Scott Have Committed, and Will Continue to Commit, Substantial Time and Resources Identifying and Investigating the Claims of Plaintiffs and the Class

Lynch/Scott have thoroughly investigated the breach since it was first publicly disclosed in June 2022, including performing factual and legal research, communicating with clients and industry experts concerning the breach, and undertaking and maintaining due diligence regarding updated factual and legal information. Lynch/Scott have also been in communication with counsel for Defendant Shields, with whom they have previously litigated data breach cases and enjoy an amicable professional relationship, regarding proposed case management issues for the next steps in this litigation, and have begun identifying and consulting with experts who will be able to advance the class's claims.

This commitment will continue. As evident from the firm resumes attached to the Declarations of Gary Lynch and Erin Green Comite, Lynch/Scott are well-funded and well-staffed firms that have represented plaintiffs in some of the largest class actions in the country. They are willing and able to commit to this litigation process regardless of its length or complexity. As

explained in more detail below, Lynch/Scott have a proven track record of devoting time and financial resources to the full prosecution of similar types of actions, and they are prepared to do so in this case as well.

Because Lynch/Scott performed important work that has already inured to the benefit of the proposed class, and because Lynch/Scott are prepared to commit substantial resources to this case, the first factor of the Rule 23(g) analysis weighs heavily in favor of their appointment.

### B. Lynch/Scott Have Substantial Experience Successfully Litigating Complex Cases, Including Numerous Data Breach Class Actions, and an Extensive Knowledge of the Applicable Law

Lynch/Scott have extensive experience litigating complex class actions and have demonstrated particular success in litigating data breach actions. Lynch/Scott has been at the vanguard of the emerging law applicable to data breach claims and has established a track record of working efficiently and collaboratively to obtain significant recoveries on behalf of the classes they have represented. The second and third factors of the Rule 23(g) analysis thus further weigh in favor of their appointment.

#### 1. Lynch Carpenter

Lynch Carpenter is a 20-lawyer plaintiff-side class action firm with offices in Pennsylvania, Illinois, and California. Lynch Carpenter has been at the forefront in data breach and privacy litigation, obtaining leadership appointments in many of the largest and most well-known cases, generating seminal legal authority in both trial and appellate courts. For example, Lynch Carpenter (then known as Carlson Lynch) pioneered the development of Pennsylvania's data breach law with the seminal Supreme Court of Pennsylvania decision in *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018). The court issued a landmark opinion—reversing the two lower courts—acknowledging that general principles of negligence support holding those who collect and store personally identifying information to a common law duty to reasonably safeguard such

information from cyber-attack. *See Dittman*, 196 A.3d at 1047. The court also clarified that Pennsylvania's economic loss doctrine does not apply where a tort duty exists independent of any contract.

Lynch Carpenter's willingness to go the distance for its clients also enables the firm to negotiate from a position of strength and obtain favorable settlements for victims of data breaches and other privacy invasions. In addition to the numerous cases listed above successfully litigated to settlement while serving as lead counsel alongside Scott+Scott, Lynch Carpenter attorneys have also served as co-lead counsel or in other leadership positions in: *In re TikTok, Inc., Consumer Privacy Litig.*, MDL 2948 (N.D. Ill.) (Lynch Carpenter serves as co-lead counsel; the district court recently granted final approval to a class settlement providing $92 million in monetary relief for the class); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL 2522 (D. Minn.) (Lynch Carpenter was appointed to the Executive Committee managing the litigation on behalf of all plaintiffs (consumers, financial institution, and shareholders). The case was ultimately settled for $10 million (for consumers) and $39 million (for financial institutions)); *Dittman v. UPMC* (multimillion dollar settlement reached and approved after remand from the Pennsylvania Supreme Court); *In re Vizio, Inc. Consumer Privacy Litig.*, MDL 2693 (C.D. Cal.) (consumer privacy breach, steering committee; $17 million settlement); and *In re: Ashley Madison Customer Data Sec. Breach Litig.*, 4:15-md-02669 (E.D. Mo.) (consumer data breach, executive committee; $11.2 million settlement).

As of August 2022, Lynch Carpenter attorneys are currently involved in leadership positions in some of the largest active data breach and privacy MDLs and consolidated cases across the country, including: *In re Wawa, Inc. Data Security Litig.*, 2:19- cv-6019 (E.D. Pa.) (representing payment card issuers as co-lead counsel); *In re: Marriott International, Inc.*, 8:19-

7

md-2879-PWG (D. Md.) (consumer data breach, steering committee); *In re Blackbaud, Inc. Customer Data Breach Litig.*, MDL 2972 (D.S.C.) (consumer data breach, steering committee). Lynch Carpenter is also litigating cases factually similar to this one, involving disclosure of protected health information: *Opris v. Sincera Reproductive Medicine*, 2:21-cv-3072 (E.D. Pa.) (Lynch Carpenter serves as co-lead counsel and recently overcame a motion to dismiss with respect to the primary claims); and *In re: Solara Medical Supplies Data Breach Litig.*, 19-cv-2284 (steering committee).

Lynch Carpenter prides itself on promoting and maintaining a collaborative, diverse, and opportunity-creating environment, while eschewing the rigidly structured, concentrated, and exclusionary power dynamics that have been features of too many elite plaintiffs' firms in the past. The firm's commitment to these principles is best seen through its actions, rather than words alone: out of the firm's twenty attorneys, eleven have obtained individual appointments to leadership positions in MDLs or similarly large consolidated cases; four of them have done so for the first time in the past three years, all while working at Lynch Carpenter.

      **a.**      **Gary F. Lynch**

Gary F. Lynch is the founding partner of Lynch Carpenter, and he has been engaged in the practice of law for over thirty years, with the majority of his career focusing on the litigation of complex class actions on behalf of plaintiffs. Mr. Lynch's extensive experience in data breach and privacy litigation, his current and prior leadership roles in consolidated and multi-district litigation cases, and his proven ability to work collaboratively with co-lead counsel in significant class actions, make him uniquely qualified to co-lead this case. Mr. Lynch has been appointed to lead many of the largest and most complex data breach cases over the past decade, including: *In re Wawa*; *In re Equifax, Inc.*; *In re: Home Depot, Inc.*; and *Wendy's*. He has served in committee positions in: *In re Marriott Int'l*; *In re: Cmty. Health Sys., Inc., Customer Sec. Data Breach Litig.*,

8

MDL 2595, 15-cv-0222 (N.D. Ala.); *In re: Arby's Rest. Group, Inc. Data Sec. Litig.*, 17-mi-55555 (N.D. Ga.); *In re: Target Corp.*; *Greater Chautauqua Fed. Credit Union et al v. Kmart Corp.*, 15-cv-02228 (N.D. Ill.), to name just a few examples.

Mr. Lynch's efforts have directly developed the law in favor of data breach and privacy invasion victims. In addition to succeeding on dispositive motions in most of the aforementioned cases, he argued the *Dittman v. UPMC* appeal on behalf of the plaintiffs before the Supreme Court of Pennsylvania, resulting in a seminal majority opinion holding that data collectors have a common law duty of care to reasonably safeguard personally identifying information. All six of the Pennsylvania justices who heard the appeal agreed in finding for Mr. Lynch's clients, with a concurrence from two justices describing only a few disagreements as to the reasoning supporting the outcome.

As demonstrated above and in his personal and firm resume, Mr. Lynch is well-versed in the factual and legal nuances of data breach cases and has a demonstrated ability to successfully lead such cases. He has been a direct participant in almost every phase of data breach litigation, including initial investigation, dispositive motions, discovery, settlement negotiation, expert witness evaluation and retention, and appeals. Given this breadth of data breach experience, Gary Lynch and his firm are well-qualified to serve as Co-Lead Counsel in this action.

### b. Elizabeth Pollock-Avery

Ms. Pollock-Avery joined Lynch Carpenter in 2017, and quickly made herself integral to the firm's success. Her passion for the firm's work was readily apparent, and within one month of working with the firm, she earned an important role in *In re: Blue Cross Blue Shield Antitrust Litigation*, assisting lead counsel in preparing for crucial depositions and oral argument on the appropriate standard of review, as well as conducting depositions and leading a document review

9

team prior to the parties reaching a $2.67 billion settlement, which received final approval on August 9, 2022.

In addition to her early work at the firm on the *Blue Cross Blue Shield* litigation, Ms. Pollock-Avery became heavily involved in the firm's ADA litigation group, fighting to protect the rights of millions of Americans to free and equal access and the exercise of the rights and privileges guaranteed to them under law. In 2018, Lynch Carpenter (under a previous name) won the Achieva Award for Excellence in Legal Services.

Ms. Pollock-Avery became involved in the firm's data breach practice in late 2017, assisting in the *Equifax* data breach litigation. Ms. Pollock-Avery has also spent significant time working on *In re Marriott Data Breach Litigation*, as well as the *In re Solara Medical Supplies Litigation*, in which Ms. Pollock-Avery honed her skills in negotiating the scope of discovery requests, both with opposing counsel and with clients. Recently, Ms. Pollock-Avery has been providing substantial support to lead counsel in the *In re: Wawa Data Breach* litigation, representing financial institutions for their claims against the nearly thousand-location strong convenience store chain, including working with experts to resolve questions regarding liability and negotiating discovery requests.

Elizabeth's privacy experience also includes leading discovery and briefing, and first-chairing two class certification hearings in *Hanlon v. Burpee*. She contributed to discovery and the district court and appellate briefing in *Popa v. Harriet Carter Gifts*. Those two cases stem from an undisclosed third party's data collection from merchant websites, and they involve novel and complex issues under Pennsylvania's two-party-consent wiretapping statute.

Ms. Pollock-Avery also has been integral to Lynch Carpenter's wage and hour practice. In the past year and a half, the firm has achieved conditional and/or collective certification in a

number of cases, in which Ms. Pollock-Avery played a significant role, including *Williams et al. v. Bob Evans Restaurants, LLC et al*, 2:18-cv-01353 (W.D. Pa. Apr. 14, 2022); *Copley v. Evolution Well v. Evolution Well Services, LLC*, 2:20-cv-01442 (W.D. Pa. Jan. 31, 2022); *Wintjen v. Denny's, Inc.* et al., 2:19-cv-00069 (W.D. Pa. Nov. 18, 2021); *Tompkins v. Ferny Properties, LLC*, 3:18-cv-00190 (D.N.D. Apr. 5, 2021); *Sudano v. Texas Roadhouse Investments of Beaver PA LLC et al.*, 2:19-cv-00064 (W.D. Pa. Apr. 26, 2021).

Ms. Pollock-Avery is a partner in Lynch Carpenter's Pittsburgh office. Admitted to practice in Pennsylvania and several federal courts across the country, she is a dedicated plaintiffs' attorney, and has the experience and requisite skill necessary to lead this litigation.

### 2. Scott+Scott

Scott+Scott is an international plaintiffs' law firm with over 100 highly experienced attorneys in offices spanning from Amsterdam to London to San Diego, with its largest office in New York City. The firm specializes in complex litigation, including an emphasis on antitrust, consumer, and securities class actions.

Scott+Scott, was recently recognized by Law360 as a "Ceiling Smasher" for its representation of women in their equity partnership. Female attorneys make up more than a third of Scott+Scott's equity partnership and Scott+Scott's Executive Committee, and the firm believes that its commitment to diversity is one of the reasons it was recognized by U.S. News & World Report for 2021 as a "Best Law Firm."

The firm's consumer litigation team, which includes Erin Green Comite and Carey Alexander, is widely recognized and respected for what Judge Castel recently characterized as its "extensive experience in litigating data breach class actions in federal courts," *Ark. Fed. Credit Union v. Hudson's Bay Co.*, 1:19-cv-04492-PKC, ECF No. 110 (S.D.N.Y.).

Scott+Scott served as the court-appointed co-lead counsel on behalf of financial institutions injured as a result of the 2017 Equifax data breach that exposed the personal and financial information of approximately 150 million U.S. consumers. *In re Equifax, Inc.*, MDL 2800 (N.D. Ga.) (settlement valued in excess of $32.5 million on behalf of financial institutions involving data breach of payment card data). The firm has consistently been on the leading edge of data privacy actions and has a track record of generating substantive results for the classes they represent. *See Wendy's*, 16-cv-00506 (W.D. Pa.) ($50 million settlement secured for class of financial institutions); *In re The Home Depot, Inc.*, MDL 2583 (N.D. Ga.) ($27.25 million settlement); *In re Target Corp.*, MDL 2522 (D. Minn.) ($59 million settlement); *Veridian Credit Union v. Eddie Bauer LLC*, 2:17-cv-00356 (W.D. Wa.) ($9.8 million settlement).

Scott+Scott is currently prosecuting a number of privacy related actions, including in *In re Google Assistant Privacy Litig.*, 5:19-cv-04286 (N.D. Cal.), representing consumers alleging California state law claims challenging Google Assistant's disclosure of their private, confidential communications without consent, and *Lopez v. Apple Inc.*, 4:19-cv-04577 (N.D. Cal.), representing consumers and their minor children alleging privacy violations under California state law by Apple through its Siri application.

Scott+Scott has the resources to invest in this action stemming in part from its myriad victories in other matters. These landmark victories include successful litigation of an antitrust action that alleged price fixing conspiracy against the world's largest banks, where Scott+Scott achieved a settlement totaling over $2.3 billion. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 13-cv-7789 (LGS) (S.D.N.Y) ("*FX*"). Scott+Scott also has diverse and extensive experience in class action consumer protection cases, including:

- *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 3:11-md-02208 (D. Mass.) ($40 million settlement achieved on behalf of a class of military service members and their families who purchased insurance contracts);

- *The Vulcan Soc'y, Inc. v. The City of N.Y.*, 07-cv-02067 (E.D.N.Y.) ($100 million settlement and significant injunctive relief was obtained for a class of black applicants who sought to be New York City firefighters but were denied or delayed employment due to racial discrimination);

- *In re Providian Fin. Corp. Credit Card Terms Litig.*, 2:10-md-01301 (E.D. Pa.) ($105 million settlement achieved on behalf of a class of credit card holders who were charged excessive interest and late charges on their credit cards); and

- *Gunther v. Capital One, N.A.*, 2:09-cv-02966 (E.D.N.Y.) (obtained net settlement resulting in class members receiving 100% of their damages).

The team of attorneys assigned to this litigation will be led by Ms. Comite and Mr. Alexander, with the support of senior members of their firm's consumer litigation team.

### a. Erin Green Comite

Erin Green Comite, a partner with Scott+Scott, has been litigating high-profile consumer, data privacy, and securities class actions since she joined the firm in 2002.

Ms. Comite's vast experience with complex, data-intensive cases would also be advantageous for the Class. For example, Ms. Comite was appointed co-lead counsel in *Wendy's*, where a settlement common fund of $50 million received final approval in 2019.

Ms. Comite also has played an integral role in prosecuting numerous other data breach class actions on behalf of financial institutions, such as: *In re The Home Depot, Inc.*, MDL2583 (N.D. Ga.) (briefing and discovery committees; $27.25 million settlement); *In re Target Corp.*, MDL 2522 (D. Minn.) (deposed apex witness; $59 million settlement); *In re Equifax, Inc.*, MDL 2800 (N.D. Ga.) (chair of law and briefing committee) (settlement valued in excess of $32.5 million on behalf of financial institutions involving data breach of credit and debit card information); and *Veridian Credit Union v. Eddie Bauer LLC*, (briefing, discovery, and settlement committees; settlement valued at $9.8 million). Ms. Comite's background is particularly well-

suited for the task of litigating this case, which involves both novel theories of recovery and, in the initial stages, the need to effectively coordinate across multiple actions.

Most recently, Ms. Comite was appointed as co-lead counsel in cases pending against sellers of toxic baby food: *In re Beech-Nut Nutrition Company Baby Food Litigation*, 21-cv-00133 (N.D.N.Y) (ECF No. 167); *In re Plum Baby Food Litig.*, 21-cv-02417 (D.N.J.) (ECF No. 74) and *Wilson v. Walmart, Inc.*, 3:21-cv-00082 (E.D. Ark.) (ECF No. 29).

Through years of handling complex class action cases, Ms. Comite has developed a variety of complementary talents needed to handle this type of litigation, such as experience briefing and arguing discovery and substantive motions; taking and defending depositions; working with liability and damages experts to develop the unique damages theories; negotiating and managing large electronic document and data productions; managing the legal research and briefing related to novel legal issues; detailed knowledge of consumer protection case law stemming from her direct participation in many precedent-setting consumer class actions; and a well-honed acumen for meaningful settlements. Based on the experience gained in the successful prosecutions and landmark results in the above cases, Ms. Comite is uniquely positioned and well-qualified to represent the interests of the Class and to assist in leading the successful prosecution of this case.

          b.     **Carey Alexander**

Carey Alexander is an associate with Scott+Scott. Since joining the bar in 2014, Mr. Alexander's practice has been exclusively focused on litigating high-profile consumer protection and data privacy class actions.

Mr. Alexander began his practice at Milberg LLP, where his initial docket included hard-fought precedent-setting cases, including *Briseno v. ConAgra Foods, Inc.*, in which the Ninth Circuit held that class representatives are not required to demonstrate that there is an administratively feasible way to determine class membership. 844 F.3d 1121, 1125 (9th Cir. 2017),

*cert. denied* 138 S.Ct. 313 (2017).  Mr. Alexander worked hand-in-hand with senior members of a four-person team to develop a novel damages methodology that was accepted by the District Court and led in part to the certification of eleven statewide consumer classes.

Since joining Scott+Scott in 2016, Mr. Alexander has been charged with increasingly substantive responsibilities that include briefing and arguing dispositive and discovery motions, developing discovery protocols, and taking and defending depositions.  Mr. Alexander has developed a track-record of working collaboratively with other members of the Plaintiffs' bar, including other movants for leadership in this action.  Mr. Alexander served on the Plaintiffs' Coordination and Discovery Committee prosecuting *In re Equifax, Inc.*, MDL 2800 (N.D. Ga.) (Thrash, J.), where he worked with multiple firms to coordinate pretrial discovery involving more than forty financial institutions and associations.

Mr. Alexander's work prosecuting complex class actions and work on data privacy matters has already generated substantive results for the classes he has helped represent, including in *Ark. Fed. Credit Union v. Hudson's Bay Co.*, No. 1:19-cv-04492-PKC, ECF No. 110 (S.D.N.Y.) (Castel, J.) (settlement valued at $5.1 million on behalf of nationwide class of financial institutions involving breach of payment card data) (Mr. Alexander briefed and argued motion for final approval); *see also Luca v. Wyndham Hotel Grp., LLC*, 2:16-cv-746-MRH (W.D. Pa.) (Hornak, J.) (challenge to resort fees brought under state consumer protection laws settled on nationwide basis for $7.6 million) (Mr. Alexander briefed and argued plaintiffs' application for attorneys' fees); *Morrow v. Ann, Inc.*, No. 1:16-cv-3340-JPO (S.D.N.Y.) (Oetken, J.) (nationwide settlement of deceptive pricing claims brought on behalf of consumers valued at $7.1 million) (Mr. Alexander briefed and argued motion for final approval); *In re Intuit Data Litig.*, 5:15-cv-1778-EJD (N.D. Cal.) (Davila, J.) (nationwide injunctive relief secured on behalf of consumers aggrieved by the

opening of fake accounts and filing of fraudulent federal and state tax returns) (Mr. Alexander briefed opposition to compel arbitration); and *Forth v. Walgreen Co, Inc.*, No. 1:17-cv-02246 (N.D. Ill.) (Lee, J.) (asserting deceptive pricing claims under more than two dozen states' laws on behalf of consumers and third-party payers) (Mr. Alexander briefed and argued discovery motions and first-chaired multiple depositions).

Mr. Alexander's commitment to the bar further manifests through appointed service on the New York City Bar Association's Consumer Affairs Committee, and service as a volunteer arbitrator in New York City's Small Claims Court. As an emerging leader in the Plaintiffs' bar, Mr. Alexander is well-positioned and well-qualified to represent the interests of the class and to assist in leading the successful prosecution of this case.

### 3. Block & Leviton LLP

Block & Leviton LLP ("B&L"), is one of the preeminent plaintiff-side class action firms in the nation. As noted by one District Court:

> While I recognize that each counsel is well qualified, I am particularly persuaded by [Block & Leviton's] experience in large securities class actions, such as its representation of plaintiffs in *In re BP Securities Litigation*, (S.D. Tex.) [settled for $175 million], *In re Google Inc. Class C Shareholder Litig.* (Del. Ch. Ct.) [payment of $522 million to stockholders], and *In re Volkswagen "Clean Diesel" Marketing, Sales and Products Liability Litigation* (N.D. Cal.) [valued at more than $15 billion]. I find the experience garnered from such representations will benefit the shareholder in this suit.[9]

*BP*, *Google*, and *VW* are not outliers. B&L's other successes, in the last few years, include: *In re McKesson Corporation Derivative Litigation*, 17-cv-01850-CW (N.D. Cal.) ($175 million cash recovery; the third-largest derivative settlement of all time.); *In re Snap Inc. Sec. Case*, Case No. JCCP 4960 (Cal. Sup.) (2021) (one of two settlements totaling $187.5 million stemming from Snap's IPO); *Klein v. HIG Capital, et al.*, C.A. No. 2017-0862-AGB (Del. Ch.) ($45 million

---

[9] *Thieffry v. Synchronoss Tech., Inc.*, 3:17-cv-07173-FLW-LHG (D.N.J. 2018) (ECF No. 21).

16

settlement); *In re Pilgrim's Pride Corporation Derivative Litigation*, Consol. C.A. No. 2018-0058-JTL (Del. Ch.) ($42.5 million settlement); *In re Pivotal Software, Inc. S'holders Litig.*, C.A. No. 2020-0440-KSJM (Del. Ch.) ($42.5 million settlement); and *In re Handy & Harman Ltd. S'holders Litig.*, Consol. C.A. No. 2017-0882-TMR (Del. Ch.) ($30 million settlement).[10]

B&L is also well qualified to serve as Liaison Counsel in this litigation. In that same role, B&L helped secure multiple, multimillion dollar settlements, including: *Moitoso v. FMR LLC*, 1:18-cv-12122-WGY (D. Mass.) (settlement of $28.5 million); *Toomey v. Demoulas Super Markets, Inc.*, 1:19-cv-11633-LTS (D. Mass.) (settlement of $17.5 million); and *Brotherston v. Putnam Investments, LLC*, 1:15-cv-13825-WGY (D. Mass.) (successful appeal, in part, of trial verdict; settled for $12.5 million).

### C. Lynch/Scott Will Commit the Resources Necessary to Coordinate the Efforts and Progress of All Consolidated Cases

Lynch/Scott are highly regarded, nationally recognized law firms with the resources and experience necessary to successfully prosecute a case of this magnitude, as they have prosecuted very similar cases in the past. These firms are responsible for achieving large class action recoveries in some of the most complex, document-intensive, and high-profile data breach class actions ever. These firms indisputably have the resources and expertise to prosecute the claims against Shields.

Although each firm is committed to expending whatever resources are necessary to achieve a favorable result for the class, all counsel are extremely cognizant of the need to control costs, have diligently done so in the other complex litigation they have been involved in, and the

---

[10] *See also MacDonald v. Dynamic Ledger Solutions, Inc., et al.*, 3:17-cv-07095 (N.D. Cal.) (settlement of $25 million); *Lao v. Dalian Wanda Group Co. Ltd.*, C.A. No. 2019-0303-JRS (Del. Ch.) ($17.375 million settlement; final approval pending); *In re Tangoe Inc. S'holders Litig.*, Consol. C.A. No. 2017-0650-JRS (Del. Ch.) ($12.5 million settlement); *Garfield v. BlackRock Mortgage Ventures, LLC*, C.A. No. 2018-0917-KSJM (Del. Ch.) ($6.85 million settlement).

proposed structure reflects that commitment. Including newer attorneys Elizabeth Pollock-Avery and Carey Alexander will result in cost savings for the putative class, as both Pollock-Avery's and Alexander's billing rates are lower than the billing rates of Gary F. Lynch and Erin Green Comite. Lynch/Scott will also use other means to reduce costs to the class in this litigation, including submitting monthly billing statements to the Court. Thus, the final Rule 23(g) factor weighs in favor of their proposed leadership structure.

## CONCLUSION

For the foregoing reasons, Plaintiffs Komar and Monette respectfully request that the Court appoint Gary F. Lynch and Elizabeth Pollock-Avery of Lynch Carpenter and Erin Green Comite and Carey Alexander of Scott+Scott as Interim Co-Lead Counsel, and Jason Leviton of Block & Leviton LLP as Interim Liaison Counsel.

Dated:  August 9, 2022                                         Respectfully submitted,

/s/ Jason M. Leviton
Jason M. Leviton
Lauren Godles Milgroom
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile:  (617) 507-6020
jason@blockleviton.com

*Proposed Interim Liaison Counsel*

Gary F. Lynch*
Elizabeth Pollock-Avery*
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
gary@lcllp.com
elizabeth@lcllp.com
*admitted *pro hac vice*

Erin Green Comite*
Carey Alexander*
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
ecomite@scott-scott.com
calexander@scott-scott.com
*admitted *pro hac vice*

*Proposed Interim Co-Lead Counsel*