**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re Shields Health Care Group, Inc. Data Breach Litigation | Case No.: 1:22-cv-10901-PBS<br><br>(Leave to file in excess of page limit granted 8/21/2023 [Doc. 83]) |

**DEFENDANT SHIELDS HEALTH CARE GROUP, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

## I.  INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Shields Health Care Group, Inc. ("Shields"), by and through its undersigned counsel, moves this Court to dismiss with prejudice the Consolidated Class Action Complaint ("Complaint") of Plaintiffs James Buechler, Julie Colby, John Kennedy, Sharon Pimental, and Cindy Tapper ("Plaintiffs"). In support of its request, Shields states that Plaintiffs lack standing to bring their declaratory judgment claim (Count X) and it should be dismissed without prejudice. Additionally, each of Plaintiffs' twenty-one[1] causes of action fails to state a claim upon which relief can be granted. Accordingly, Count X should be dismissed without prejudice and the remainder of the Complaint dismissed with prejudice under Rule 12(b)(6). If the Court does not dismiss Count X for lack of standing, it too should be dismissed with prejudice.

---

[1] Although the last cause of action is numbered as the twenty second, there are only twenty-one causes of action.

II.     **FACTUAL ALLEGATIONS**[2]

A.     **The Subject Data Security Incident.**

The Complaint makes the following factual allegations. Shields is a Massachusetts corporation alleged to provide healthcare services at locations throughout New England. Doc. 64, ¶¶ 1, 26. From approximately March 7, 2022 to March 21, 2022, "unauthorized third-party computer hackers" accessed and exfiltrated Shields' systems, including the personally identifiable information ("PII") and protected health information ("PHI") of Plaintiffs and putative class members (the "Incident"). *Id.* ¶¶ 4, 33-34. Shields discovered the Incident on March 28, 2022, and after investigating its nature and scope, provided notice of the Incident by press release dated June 7, 2022. *Id.* ¶¶ 35-36. It also mailed notices to potentially affected individuals. *Id.* ¶¶ 22-25, 43.

B.     **Plaintiffs' Experiences.**

1.     *James Buechler*

Plaintiff James Buechler is a Maryland resident who is alleged to have been a Shields patient at Mercy Hospital at all relevant times, and to have learned about the Incident through a notice posted on its website and through a notice mailed to him. Doc. 6, ¶¶ 21, 43. After learning about the Incident, he is alleged to have spent approximately 10-15 hours "dealing with the consequences of the Incident." *Id.* ¶ 44. The Complaint also alleges that after the Incident, thousands of dollars of unauthorized charges were made to Buechler's Bank of America card, which caused him to be without it for three days and to receive a "lower cash back discount" by virtue of having to use a different card. *Id.* ¶ 47. The Complaint also alleges that in April 2022, his email account was frozen due to fraudulent activity, which caused him to spend "many hours"

---

[2] When evaluating a motion to dismiss under Rule 12(b)(6), all well-pled allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Barchock v. CVS Health Corp.*, 886 F3d 43, 48 (1st Cir. 2018). IWP does not admit the truth of any allegations in the Complaint and recites them here solely for purposes of this motion.

corresponding with AOL to regain access. *Id.* ¶ 48. He is also alleged to have purchased identity theft protection through AllClear for $299 per year. *Id.* ¶ 49. Lastly, the Complaint alleges that Buechler suffered lost time, annoyance, interference, and inconvenience, emotional distress, and diminution in value of PII as a result of the Incident. Doc. 64, ¶¶ 50-51.

2.    *Julie Colby*

Plaintiff Julie Colby is a Maine resident who is alleged to have been a Shields patient at all relevant times at a location in Topsham, Maine, and to have received notice of the Incident. Doc. 64, ¶¶ 22, 55, 57. The Complaint alleges that after receiving notice, Colby thereafter spent time checking her accounts. *Id.* ¶ 58. She is also alleged to have received an increase in spam telephone calls since the Incident. *Id.* ¶¶ 59. The Complaint also alleges Colby suffered damages in the form of emotional distress, payment of monies she not would have otherwise paid if she knew Shields had inadequate data security, diminution in value of her PII, loss of privacy, and an increased risk future risk of harm. Doc. 64, ¶¶ 62-63.

3.    *John Kennedy*

Plaintiff John Kennedy is a Rhode Island resident who is alleged to have to have received notice of the Incident. Doc. 64, ¶ 23, 65. The Complaint alleges he thereafter spent at least 10 hours "dealing with the consequences of the Incident." *Id.* ¶ 67. It also alleges Kennedy has received phishing correspondence, including several calls per day since the Incident. *Id.* ¶ 70. Lastly, the Complaint alleges Kennedy has suffered damages in the form of lost time, annoyance, interference, inconvenience, emotional distress, and diminution in value of PII. *Id.* ¶¶ 71-72, 75.

4.    *Sharon Pimental*

Plaintiff Sharon Pimental is a Rhode Island resident who is alleged to be a Shields patient and to have received notice of the Incident. Doc. 64, ¶¶ 24, 78. The Complaint alleges that since

the Incident, she has spent time "dealing with the consequences" of the Incident, faces an increased risk of future harm, and has received phishing correspondence including solicitation calls. *Id.* ¶¶ 80, 82-83. It also alleges Pimental has suffered damages in the form of lost time, annoyance, interference, inconvenience, and emotional distress. *Id.* ¶¶ 84-85.

> 5.     *Cindy Tapper*

Plaintiff Cindy Tapper is a New Hampshire resident who is alleged to be a Shields patient and to have received notice of the Incident. Doc. 64, ¶¶ 25, 91. The Complaint alleges that since the Incident, she has spent approximately five hours "dealing with the consequences" of the Incident. *Id.* ¶ 93. It also alleges Tapper has suffered damages in the form of an increased risk of future harm, lost time, annoyance, interference, inconvenience, emotional distress, and diminution to the value of her PII. *Id.* ¶¶ 95-97, 100.

**C.     Plaintiffs' Claims.**

The Complaint alleges, generally, that Shields maintained Plaintiffs' and the putative class members' PII/PHI "in a negligent and reckless manner." Doc. 64. ¶ 9. It alleges Shields wrongly did not notify Plaintiffs and putative class members of the Incident until more than sixty (60) days after it discovered the Incident. *Id.*, ¶ 3.

Plaintiffs seek to represent a nationwide class of "[a]ll individuals whose Private Information was compromised in the data breach of Shields' systems from approximately March 7, 2022 to March 21, 2022," as well as sub-classes of citizens of Maryland, Maine, Rhode Island, and New Hampshire meeting the same definition. Doc. 64, ¶ 168-169.

The Complaint contains twenty-one causes of action, including on behalf of all Plaintiffs and the proposed nationwide class, (i) negligence; (ii) negligence *per se*; (iii) breach of express contract; (iv) breach of implied contract; (v) breach of implied covenant of good faith and fair

dealing; (vi) negligent misrepresentation; (vii) invasion of privacy by intrusion; (viii) breach of fiduciary duty; (ix) breach of confidence; (x) declaratory judgment; and (xi) unjust enrichment.

On behalf of Kennedy and Pimental and the proposed Rhode Island sub-class, the Complaint pleads a cause of action under (xii) the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws. §§ 6-13.1-1, *et seq.* On behalf of Colby and the proposed Maine sub-class, the Complaint pleads causes of action under (xiii) the Maine Unfair Trade Practices Act, ME. Stat. tit. 5, §§ 205, 213, *et seq.*; (xiv) the Maine Uniform Deceptive Trade Practices Act, ME. Stat. tit. 10, §§ 1212, *et seq.*; and (xv) the Maine Confidentiality of Health Care Information Law, ME. Stat. tit. 22, § 1711-C. On behalf of Buechler and the proposed Maryland sub-class, the Complaint pleads a cause of action under (xvi) the Maryland Consumer Protection Act, MD. Code, Com. Law §§ 613-101, *et seq.*; (xvii) the Maryland Personal Information Protection Act, MD. Code, Com. Law §§ 14-3501, *et seq.*; and (xviii) the Maryland Social Security Number Privacy Act, MD. Code, Com. Law §§ 4-3401, *et seq.* On behalf of Tapper and the proposed New Hampshire sub-class, the Complaint pleads a cause of action under (xix) the New Hampshire Consumer Protection Act, N.H. Rev. Stat. §§ 358-A, *et seq.*; and (xx) the New Hampshire Notice of Security Breach statute, N.H. Rev. Stat. §§ 359-C:20, *et seq.* Lastly, the Complaint contains a claim under (xxi) the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1, *et seq.*, on behalf of all Plaintiffs and the proposed nationwide class.

## III.   LEGAL STANDARD

### A.   Standard for Motion to Dismiss.

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing Fed. R. Civ. P. 8(a)(2)). A pleading with mere "labels and conclusions" or "a formulaic recitation of the elements of a cause

of action" is insufficient. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rule 8(a)(2) requires a showing, more than a "blanket assertion," of entitlement to relief. *Twombly*, 550 U.S. at 555, n.3.

To survive a motion to dismiss under Rule 12, a complaint requires factual matter that, if accepted as true, would "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The court must "accept as true all material allegations of the complaint, and…construe the complaint in favor of the complaining party." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). However, a court is not required to accept as true "'statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory," or speculative allegations that fail to cross "the line between conclusory and the factual." *Blum v. Holder*, 744 F.3d 27, 33 (1st Cir. 2011). Reasonable inferences are to be drawn in a plaintiff's favor when evaluating a motion to dismiss, but a court is not bound to credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Facial plausibility exists when the pled facts permit a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard requires "more than a sheer possibility that a defendant acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "If the facts articulated in the complaint are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' the complaint is vulnerable to a motion to dismiss." *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).

IV.    **ARGUMENT**

A.    **Plaintiffs' Negligence Claim Should Be Dismissed.**

To state a claim for negligence under Massachusetts law, a plaintiff must allege (1) a legal duty owed by the defendant; (2) breach of that duty; (3) causation; and (4) an actual loss. *Santos v. U.S. Bank Nat'l Ass'n,* 89 Mass. App. Ct. 687, 699, 54 N.E.3d 548, 558 (2016) (citing *Delaney v. Reynolds*, 63 Mass. App. Ct. 239, 241, 825 N.E. 2d 554 (2005)). "Negligence in the abstract does not support a cause of action." *Donovan v. Philip Morris USA, Inc.*, 455 Mass. 215, 222, 914 N.E.2d 891, 899 (2009) (quoting *Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 217, 560 N.E.2d 122 (1990)). Furthermore, in Massachusetts "injury and damages are integrally related: there can be no invasion of the rights of another unless legal damage is caused, and for that reason nominal damages cannot be recovered." *Id.* (quoting *Cannon v. Sears, Roebuck & Co.*, 374 Mass. 739, 742, 374 N.E.2d 582 (1978)). A plaintiff is instead only entitled to recover damages reasonably expected to follow a negligent act, but not those that only *possibly* may follow. *Id.* (quoting *Pullen v. Boston Elevated Ry.*, 208 Mass. 356, 357-58, 94 N.E. 469 (1911) (emphasis added)).

1.    *Plaintiffs' Negligence Claim Is Barred by the Economic Loss Doctrine.*

At the outset, Plaintiffs' negligence claim is barred by the economic loss doctrine, which prohibits negligence claims asserting purely economic losses. *See Portier v. NEO Tech. Sols.*, No. 3:17-cv-30111-TSH, 2019 WL 7946103, at *16 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, 2020 WL 877035 (D. Mass. Jan. 30, 2020). The long-standing rule in Massachusetts is that "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 439 Mass. 387, 413, 788 N.E.2d 522, 543 (2003) (citing *FMR Corp. v. Boston Edison Co.*,

415 Mass. 393, 395, 613 N.E.2d 902 (1993)). "The doctrine exists to avoid generating 'open-ended negligence liability [for] anyone affected by a negligent act.'" *Eggiman v. Bank of America, N.A.*, 1:22-cv-10298-ADB, 2023 WL 2647071, at *3 (D. Mass. Mar. 27, 2023) (quoting *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498 (1st Cir. 2009)). Thus, to state a claim for negligence, a plaintiff typically must allege damages beyond pure economic loss. *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 106 (D. Mass. 2021) (citing *FMR Corp., supra*).

Here, Plaintiffs at best only allege purely economic losses resulting from the Incident. The Complaint alleges no physical harm or property damage to Plaintiffs. Their general allegations of diminished value of PII are speculative since the Complaint does not allege Plaintiffs attempted to sell their information or that they were forced to accept a lower price. *See In re Curran*, 855 F.3d at 25. Although the Complaint alleges that Plaintiffs' PII is an "intangible form of property," the harm alleged remains a purely economic loss as their PII is not itself alleged to have been damaged in any way. Doc. 64, ¶¶ 54, 62, 75, 88, 100. Plaintiffs' emotional distress claims are also barred by the economic loss doctrine because they fail to equate to a physical injury given that the Complaint does not allege the necessary physical harm manifested by objective symptomatology required to state a claim for negligent infliction of emotional distress. *See Portier*, 2019 WL 7946103, at *18 n.13. Instead, emotional distress is alleged vaguely. Doc. 51, 61, 72, 85, 97.

This Court, as well as those in other jurisdictions, have found negligence claims under Massachusetts law arising out of a data breach subject to dismissal under the economic loss doctrine. *See In re TJX*, 564 F.3d at 498-99 (rejecting negligence claim brought by plaintiffs whose credit and debit cards were compromised in data breach); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F.Supp.2d 942, 967 (S.D. Cal. 2014) (dismissing claims where plaintiffs alleged expenses to purchase credit monitoring, loss of use of services, and

diminution in value of merchandise); *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F.Supp.3d 1154, 1174 (D. Minn. 2014) (dismissing customers' negligence claims because economic loss doctrine barred recovery for unauthorized charges, lost access to accounts, and misuse of personal information). Massachusetts law therefore dictates that Plaintiffs' negligence claim is barred by the economic loss doctrine and should be dismissed.

        2.     *The Complaint Does Not Allege that Plaintiffs Colby, Kennedy, Pimental, and Tapper Suffered an Actual Loss.*

Even if Plaintiffs' negligence claim is not barred by the economic loss doctrine, the Complaint does not allege Plaintiffs Colby, Kennedy, Pimental, or Tapper have suffered a compensable loss necessary to state such a claim. These Plaintiffs generally allege that they face a future risk of harm, diminution in value of PII, time spent, emotional distress, and inconvenience. In *Portier*, a prior data breach case in this Court, it was noted that "Massachusetts require[s] a measurable loss as a necessary element of a negligence claim." *See Portier*, 2019 WL 7946103, at *15. This measurable loss, such as monetary harm, is necessary to meet the requirement for "actual loss," even when actual misuse is alleged. *See id.* Thus, the alleged future risk of harm does not constitute a sufficient actual loss.

Nor are the Complaint's general allegations of Plaintiffs' "lost time" a cognizable injury able to support a negligence claim. As pled, that lost time is immeasurable since unlike in *Portier*, Plaintiffs here do not assign a monetary value to their time. *See* 2019 WL 7946103, at *16 (finding general allegations of lost time are too speculative to constitute cognizable injury (quoting *Corona v. Sony Pictures Entertainment, Inc.*, No. 14-CV-09600 RGK (Ex), 2015 WL 3916744, at *4)). The alleged lost time is entirely vague and not a measurable loss.

The Complaint's allegations that Plaintiffs' PII has diminished in value is also not a cognizable injury. It does not allege that they attempted to sell their information or that they were

forced to accept a decreased price. They have thus not incurred any monetary loss related to their PII's value. *See Portier*, 2019 WL 7946103, at \*15. These allegations are entirely speculative, similar to a risk of future harm.

Plaintiffs' alleged emotional distress and anxiety are also not actual losses under Massachusetts law. As referenced above, to recover damages for negligent infliction of emotional distress, a plaintiff must prove "physical harm manifested by objective symptomatology" and "that a reasonable person would have suffered emotional distress under the circumstances." *Helfman v. Northeastern University*, 485 Mass. 308, 327, 149 N.E.3d 758, 776 (2020) (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 557, 437 N.E.2d 171 (1982)). Here, Plaintiffs are not alleged to have suffered specific physical harm or symptomatology necessary to sustain their claims for emotional distress. *See Portier*, 2019 WL 7946103, at \*18 n.13 (emotional distress alleged in complaint inadequate without allegation of suffering of physical harm manifested by objective symptomology). If the Court does not dismiss the negligence claim under the economic loss doctrine, it must be dismissed as Colby, Kennedy, Pimental, or Tapper for failure to plead an actual loss.

Accordingly, Plaintiffs' negligence claim (Count I) should be dismissed with prejudice.

### B.      Plaintiffs' Negligence *Per Se* Claim Should Be Dismissed.

In addition to being subject to dismissal under the economic loss doctrine, Plaintiffs' negligence *per se* claim fails because Massachusetts does not recognize it as a separate cause of action. *In re TJX*, 524 F. Supp. 2d at 91 (citing *Berish v. Bornstein*, 437 Mass. 252, 273 (2002)); *Lev v. Beverly Enterprises-Massachusetts, Inc.*, 457 Mass. 234, 245 (2010) (citing *Bennett v. Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358-359 (1990)). Accordingly, Plaintiffs' negligence *per se* claim (Count II) should be dismissed with prejudice.

### C.       Plaintiffs' Breach of Contract Claims Should Be Dismissed.

The Complaint contains counts for breach of both express (Count III) and implied contract (Count IV). It also contains a claim that Shields committed a breach of the implied covenant of good faith and fair dealing (Count V). Under Massachusetts law, a breach of contract claim requires: (1) a valid contract between the parties; (2) the plaintiff was ready, willing, and able to perform; (3) the defendant breached the contract; and (4) the plaintiff sustained damages as a result. *Omori v. Brandeis Univ.*, No. CV-20-11021-NMG, 2023 WL 3511341, at *2-3 (D. Mass. May 17, 2023) (quoting *In re Bos. Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20, 23 (D. Mass. 2021)).

All three contractual claims should be dismissed because the Complaint does not allege a valid express or implied contract between them and Shields regarding data security. Under the breach of express contract count, the Complaint vaguely alleges that Plaintiffs "entered into written agreements with [Shields] as part of the medical services" that Shields provided, which involved "a mutual exchange of consideration whereby [Shields] provided these services in exchange for payment." Doc. 64, ¶ 203. Yet none of the Complaint's allegations in the breach of express contract count, or elsewhere in the Complaint, remotely allege a specific written agreement that included data security. *Id.* ¶¶ 202-206.

Nor does the Complaint adequately allege an implied contract, which can be inferred under Massachusetts law from the parties' conduct and relations and an intent to contract. *See Price Chopper, Inc. v. Consol. Beverages, LLC*, No. 09-10617-FDS, 2011 WL 901817, at *5 (D. Mass. Mar. 11, 2011) (citing *T.F. v. B.L.*, 442 Mass. 522, 526-27, 813 N.E.2d 1244 (2004)). "'An implied contract requires proof that there was a benefit to the defendant, that the plaintiff expected the defendant to pay for that benefit, and that the defendant expected, or a reasonable person should have expected, that he or she would have to pay for that benefit.'" *Price Chopper*, 2011 WL 901817, at *5 (quoting *T.F.*, 442 Mass. at 526-27). The Complaint only alleges that Shields required

Plaintiffs to provide it their PII/PHI to obtain health care services, and that "Shields agreed to safeguard and protect it." Doc. 64, ¶¶ 208-209. But these conclusory allegations are unsupported by any statements of conduct by Shields. *See Price Chopper*, 2011 WL 901817, at *5. The Complaint's allegations regarding Shields' privacy policies do not evidence an agreement to provide data security, but merely a statement that Shields takes privacy "seriously." Doc. 64, ¶ 101. There is also no basis to find an implicit agreement merely by Plaintiffs providing their information in a consumer transaction, as was the case here. No authority exists for such a proposition.

The Complaint's allegations that Shields breached the covenant of good faith and fair dealing also fail because a breach of contract alone does not necessarily constitute a breach of the covenant. *See Zoll Med. Corp. v. Barracuda Networks, Inc.*, No. 20-11997-NMG, 2022 WL 444827, at *5 (D. Mass. Feb. 14, 2022) (citing *Brand Group Int'l, LLC v. Established Brands Int'l*, 2012 WL 1935310 (D. Mass. July 26, 2011)). To determine whether a breach of the covenant occurred, courts consider whether the defendant's performance lacked good faith. *Id.* at *6 (citing *Weiler v. PortfolioScope*, 469 Mass. 75, 82, 12 N.E.2d 354, 362 (2014)).

Here, the Complaint's allegations in support of this claim do not suggest any bad faith and are vague and conclusory. It generically alleges that Shields merely did not implement purportedly required data security measures and that Shields failed to act in good faith, without further explanation.  Doc. 64, ¶¶ 220-221. These allegations are no different than the Complaint's vague general breach of contract allegations.

Plaintiffs Colby, Kennedy, Pimental, or Tapper's breach of contract claims also fail because, as discussed above, Plaintiffs did not suffer damages as a result of the Incident. *See Hoang v. Eternal Salon, Inc.*, 91 Mass. App. Ct. 1109, at *1 (2017) (quoting *Singarella v. Boston*, 342

Mass. 385, 387, 173 N.E.2d 290 (1961) (breach of contract claim requires, among other things, that plaintiff suffered damages)).

Accordingly, Plaintiffs' claims for breach of express contract (Count IV), breach of implied contract (Count V), and breach of the implied covenant of good faith and fair dealing (Count VI) should be dismissed with prejudice.

### E.    Plaintiffs' Negligent Misrepresentation Claims Should Be Dismissed.

In Massachusetts, a negligent misrepresentation claims requires a plaintiff to show the defendant "'(1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information.'" *Monks v. Astoria Bank*, No. CV 16-12084-FDS, 2017 WL 2435278, at *6 (D. Mass. June 5, 2017) (quoting *First Marblehead Corp. v. House*, 473 F.3d 1, 9 (1st Cir. 2006)). As discussed above under their negligence count, Plaintiffs Colby, Kennedy, Pimental, or Tapper do not allege a pecuniary loss and so their claim should be dismissed.

Here, the Complaint's allegations do not suggest or indicate Shields supplied false information or otherwise represented that it would "maintain adequate data privacy and security practices and procedures." Doc. 64, ¶ 224. The Complaint relies solely on Shields' Privacy Practice statement on its website, which does not represent that Shields had any particular level of data security practices. More than mere legal conclusions couched as fact are required to satisfy Rule 12(b)(6). *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). The Complaint also alleges that Shields knew or should have known its purported representations were not true

because of "multiple warnings" about the inadequacy of its data privacy. Doc. 64, ¶ 226. Yet the Complaint identifies no such warnings received by Shields that would support such a conclusion.

Accordingly, Plaintiffs' negligent misrepresentation claim (Count VI) should be dismissed with prejudice.

### F.   Plaintiffs' Invasion of Privacy Claim Should Be Dismissed.

Massachusetts does not recognize a common law cause of action for invasion of privacy, which the Complaint contains. *Axford v. TGM Andover Park, LLC*, No. 19-cv-11540-ADB, 2021 WL 681953, at *13 (D. Mass. Feb. 22, 2021) (citing *Spencer v. Roche*, 755 F. Supp. 3d 250, 271 (D. Mass. 2010)). For that reason, Plaintiffs' invasion of privacy claim is subject to dismissal.

The claim would also fail under M.G.L. c. 214, § 1B, which protects a right to privacy in Massachusetts, because the Incident was the result of third parties' unauthorized conduct. The statute requires "'[1] a gathering and dissemination of facts of a private nature that [2] resulted in an unreasonable, substantial or serious interference with [a plaintiff's] privacy.'" *Hayes v. Mirick*, 378 F. Supp. 3d 109, 116-17 (D. Mass. 2019) (quoting *Branyan v. Southwest Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015)); M.G.L. c. 214, § 1B. The Complaint does not allege that Shields disseminated or affirmatively disclosed Plaintiffs' PII/PHI. Rather, it only alleges that Shields' data security was insufficient, such that unauthorized third parties were able to commit an invasion of privacy without the actual involvement of Shields. The Complaint's attempt to cast this as a "disclosure" is unsupported.

The claim also fails under the intrusion upon seclusion theory under which it is brought. Section 652B of the Restatement (Second) of Torts defines intrusion upon seclusion as an intentional intrusion, physically or otherwise, upon another's solitude or seclusion or his or her private affairs or concerns. *Cook v. WHDH-TV, Inc.*, No. 941269, 1999 WL 1327222, at *5 (Mass.

Super. Mar. 4, 1999). The Complaint does not allege that Shields committed any intentional invasion of privacy, which it cannot since the Incident was the results of unauthorized third parties' actions. Plaintiffs' invasion of privacy claim (Count VII) should be dismissed with prejudice.

**G.    Plaintiffs' Breach of Fiduciary Duty Claim Should Be Dismissed.**

The Complaint's breach of fiduciary duty claims fails because there is no basis to find such a duty as it relates to data security. A breach of fiduciary duty claim under Massachusetts law requires a plaintiff to show "'(1) the existence of a duty of a fiduciary nature, based upon the relationship of the parties, (2) breach of that duty, and (3) a causal relationship between that breach and some resulting harm to the plaintiff.'" *Xiao Wei Yang Catering Linage in Inner Mongolia Co. Ltd v. Inner Mongolia Xiao Wei Yang USA, Inc.*, 340 F. Supp. 3d 70, 82 (D. Mass. 2018) (quoting *Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*, 53 F. Supp. 3d 279 (D. Mass. 2014)). Although Massachusetts courts have found such a duty of confidentiality as it relates to medical providers, data security procedures to prevent unauthorized third-party cyberattacks has not been contemplated within that case law. *See Alberts v. Devine*, 395 Mass. 59, 69 (1985). The relationship between Shields and Plaintiffs, as it relates to data security, is no different than any entity to which Plaintiffs might provide their PII/PHI in this context. The provision of medical services is immaterial in that respect and so the "special relationship" irrelevant. Plaintiffs' breach of fiduciary duty (Count VIII) is without basis and therefore should be dismissed with prejudice.

**H.    Plaintiffs' Breach of Confidence Should Be Dismissed.**

The Complaint alleges that Shields violated their confidence, even though, as discussed above, the Incident was the result of unauthorized third parties' actions. Massachusetts courts have not recognized breach of confidence as a cause of action and have not even discussed it outside the trade secret context, which is inapplicable here. *See Harvard Apparatus, Inc. v. Cowen*, 130 F.

Supp. 2d 161 (D. Mass. 2001); *Connors v. Howard Johnson Co.*, 30 Mass. App. Ct. 603, 571 N.E.2d 427 (1991). Accordingly, Plaintiff's breach of confidence claim (Count IX) should be dismissed with prejudice.

## I.      Plaintiffs' Declaratory Judgment Claim Should Be Dismissed.

The Complaint seeks a judgment from this Court that Shields owes a legal duty to Plaintiffs to secure their PII and timely notify them of any data breaches, and that Shields breached and continues to breach that legal duty. Doc. 64, ¶¶ 264-266. It also seeks an injunction "requiring Shields to employ adequate security protocols consistent with law and industry standards to protect patients' Private Information." *Id.* ¶ 267.

First, Plaintiffs lack standing under Rule 12(b)(1) to bring these requests because they are not likely to redress Plaintiffs' alleged injuries. *See Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023) (citing *Lijuan v. Defs. of Wildlife*, 504 U.S. 555, 568-71 (1992)). The Complaint claims such relief is necessary to prevent a subsequent data security incident, but it "cannot protect the plaintiffs from future misuse of their PII by the individuals they allege now [may already] possess it." *Id.* Standing for injunctive relief is dependent on whether the plaintiffs are likely to suffer a future injury. *Id.* (quoting *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 276 (1st Cir. 2022)). The notice letter quoted in the Complaint also indicates Shields took action, including rebuilding certain systems, and continues to further enhance its protections. Doc. 64, ¶ 37. This undermines any argument that the Incident makes a future data security incident more likely. *See Webb*, 72 F.4th at 378. ("[Defendant] faces much the same risk of future cyberhacking as virtually every holder of private data. If that risk were deemed sufficiently imminent to justify injunctive relief, virtually every company and government agency might be exposed to requests for injunctive relief like the one the plaintiffs seek here."). Accordingly, Plaintiffs lack standing

under Rule 12(b)(1) to bring their declaratory judgment claim and it should be dismissed without prejudice.

Additionally, the Complaint's allegations in support of this request are far too conclusory and vague. The Complaint alleges no specific facts regarding Shields' data security posture at any point in time, including at present. The request is instead based solely on the Incident's occurrence. The Complaint does not establish that Shields presently has inadequate data security such that another incident is likely. Relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, requires a dispute that is (1) "definite and concrete, touching the legal relations of the parties having adverse legal interests"; (2) "real and substantial"; and (3) "admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Here, the Complaint is based entirely on hypothetical facts—Plaintiffs' presumptions regarding Shields' data security. Accordingly, Plaintiffs' declaratory judgment (Count X) claim fails under Rule 12(b)(6) and should be dismissed with prejudice.

**J.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed.**

"Unjust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329, 833 N.E.2d 171, 176 (2005) (quoting *Taylor Woodrow Blitman Const. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982)). To state a claim for unjust enrichment in Massachusetts, a plaintiff must establish that the defendant unjustly received a benefit, which determination depends on the parties' reasonable expectations. *Global Investors Agent Corp. v. National Fire Ins. Co.*, 76 Mass. App. Ct. 812, 826, 927 N.E.2d 490, 494 (2010)).

The Complaint alleges Plaintiffs conferred a monetary benefit on Shields through payments made for health care services, that Shields "appreciated or had knowledge of the benefits conferred upon it," that these payments should have been used to pay for data security, and that Plaintiffs were damaged in the amount of the difference in value between health services with reasonable data security and without it. Doc. 64, ¶¶ 272-275. However, the Complaint does not allege how it is unjust for Shields to retain money it was paid for the health care services it provided to and which were received by Plaintiffs, or that data security measures were ever part of these transactions, or that such an expectation is reasonable. *See Global Investors Agent Corp.*, 76 Mass. App. Ct. at 826. Plaintiffs' merely repeat the requirements for unjust enrichments without supporting their conclusory allegations. Accordingly, Plaintiffs' unjust enrichment claim (Count XI) should be dismissed with prejudice.

### K. Plaintiffs Kennedy and Pimental's Claim Under the Rhode Island Deceptive Trade Practices Act Should Be Dismissed.

The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1*, et. seq.* ("R.I. DTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. R.I. Gen. Laws § 6-13.1-2. Unfair acts are defined as affronting public policy; immoral, oppressive or unscrupulous; and causing substantial injury to consumers. *Ames v. Oceanside Welding & Towing Co.,* 767 A.2d 677, 681 (R.I. 2001).

Kennedy and Pimental's R.I. DTPA claim first fails because the statute only provides a private cause of action to "consumers," which the Complaint does not allege them to be. *See Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 506 (D.R.I. 2020). It also fails because a safe harbor exemption exists under the R.I. DTPA for "actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority" of Rhode Island or the United States. R.I. Gen. Laws § 6-13.1-4. The

Supreme Court of Rhode Island has stated this exemption applies to all activities and businesses that are subject to monitoring by state and federal regulatory bodies or officers, not just those permitted under state or federal law. *See, e.g., Patane v. Nestle Waters North Am., Inc.*, 478 F. Supp. 3d 318, 353 (D.R.I. 2020) (quoting *Lynch v. Conley*, 853 A.3d 1212, 1214 (R.I. 2004)); *Kelley v. Cowesett Hills Assocs.*, 768 A.2d 425, 431-32 (R.I. 2001).

Here, the Complaint, including the R.I. DTPA count, alleges that Shields failed to protect Plaintiffs' private information as required by the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and the Health Insurance Portability and Accountability Act, 42 U.S.C. §§ 1302d, *et seq.* ("HIPAA"). Doc. 64, ¶¶ 7, 124-134, 289. The Complaint also alleges that Shields' conduct at issue was subject to standards issued by the U.S. Department of Health and Human Services' Office of Civil Rights. *Id.* ¶¶ 135-138. These allegations admit that Shields' conduct at issue was subject to monitoring by federal agencies and laws. *See Patane*, 478 F. Supp. 3d at 353. This triggers the safe harbor exemption, and so Kennedy and Pimental's R.I. DTPA claim (Count XII), premised on Shields' protection of PII/PHI and notification of the Incident, should be dismissed with prejudice.

### L.    Plaintiff Colby's Claim Under the Maine Unfair Trade Practices Act Should Be Dismissed.

The Maine Unfair Trade Practices Act ("ME UTPA") permits recovery by consumers against those who utilize "unfair methods of competition" or "unfair or deceptive acts of practices in the conduct of trade or commerce." 5 Me. Rev. Stat. §§ 207, 213(1).

The ME UTPA requires a plaintiff to suffer a "substantial" loss of money or property. 5 Me. Rev. Stat. § 213(1); *McGahey v. Fed. Nat'l Mortg. Ass'n*, 266 F. Supp. 3d 421, 436 (D. Me. 2017) (finding harm to credit score insufficient); *McKinnon v. Honeywell, Int'l, Inc.*, 2009 ME 69, ¶ 21. Here, the Complaint does not allege that Colby has suffered any out-of-pocket losses. Instead,

she only alleges to have suffered vague, unquantified damages like lost time, emotional distress, diminution in value of her PII, and an increase in spam telephone calls. Doc. 64, ¶¶ 58-59, 62-62.

Courts evaluating such alleged damages in the context of ME UTPA claims have found them insufficient to meet this requirement. The Maine District Court found a plaintiff cannot recover for lost time under the ME UTPA. *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 660 F. Supp. 2d 94, 102 (D. Me. 2009). The *Hannaford* matter later went on appeal to the First Circuit, which upheld dismissal of the ME UTPA claim. *Anderson*, 659 F.3d at 161. Here, Colby's non-monetary or property damage claims require dismissal of her ME UTPA (Count XIII) claim with prejudice.

### M. Plaintiff Colby's Claim Under the Maine Uniform Deceptive Trade Practices Act Should Be Dismissed.

The Maine Uniform Deceptive Trade Practices Act ("ME UDTPA") generally prohibits representing that a good or service is of a particular standard, quality or grade, as well as conduct that creates a likelihood of confusion or misunderstanding. *See* Me. Rev. Stat. tit. 10 § 1212. However, the only remedy offered is an injunction against the deceptive trade practice. Me. Rev. Stat. tit. 10 § 1213; *J.S. McCarthy Co., Inc. v. Brausse Diecutting & Converting Equipment, Inc.*, 340 F. Supp. 2d 54 (D. Me. 2004) (internal citations omitted) (case law and commentary confirm intent and purpose of ME UDTPA "is to provide aggrieved parties an opportunity to seek injunctive relief from deceptive practices")

In support of this claim, the Complaint merely repeats its allegations of Shields' alleged wrongdoing, which are inapplicable to ME UDTPA, as discussed above. It also demands monetary and non-monetary relief, including injunctive relief. Doc. 64,¶ 322. Thus, to the extent Plaintiff Colby seeks anything besides injunctive relief, those claims must be dismissed.

But so must the claim for injunctive relief. "The injunctive remedy authorized by the Act applies to a claim of something like ongoing deception, where the remedy is cessation of the deception." *Am. Aerial Servs., Inc. v. Terex USA LLC*, No. 2:12-CV-00361-GZS, 2013 WL 1898535, at *5 (D. Me. Mar. 6, 2013), *aff'd*, No. 2:12-CV-003610-GZS, 2013 WL 1898533 (D. Me. May 7, 2013) (dismissing ME UDTPA claim that was about monetary damages and a past act, not ongoing violations). The ME UDTPA claim, as pled in the Complaint, concerns Shields' pre-Incident conduct and does not allege it is engaged in any sort of ongoing deceptions. As discussed above regarding Plaintiffs' declaratory judgment claim, they lack standing to seek injunctive relief for backwards-looking relief that will not redress their current alleged injuries. For that reason, Plaintiff Colby's ME UDTPA claim (Count XIV) should be dismissed with prejudice.

### N.   Plaintiff Colby's Claim Under the Maine Confidentiality of Health Care Information Law Should Be Dismissed.

The Maine Confidentiality of Health Care Information Law ("ME CHCL") generally prohibits unauthorized disclosure of patient records. Me. Rev. Stat. tit. 22 § 1711-C(2). The ME CHCL permits a private action "against a person who has intentionally unlawfully disclosed health care information" in the Superior Court located where the disclosure occurred." Me. Rev. Stat. tit. 22 § 1711-C(13). This claim is brought in Massachusetts federal court and so must be dismissed under the statute's language. "The action may seek to enjoin unlawful disclosure and may seek costs and a forfeiture or penalty." Me. Rev. Stat. tit. 22 § 1711-C(13)(B)-(C)*.* Damages are not permitted. *Med. Mut. Ins. Co. of Maine, Inc. v. Burka*, No. 2:16-CV-462-GZS, 2017 WL 1743505, at *6, n.9 (D. Me. May 3, 2017). Yet the Complaint seeks "actual damages," which also must be stricken. Doc. 64, ¶ 331.

Moreover, Colby's ME CHCL claim fails because the Complaint's factual allegations do not support a violation. The statute defines "disclosure" as "the release, transfer or provision of access to health care information in any manner obtained as a result of a professional health care relationship between the individual and the health care practitioner or facility to a person or entity other than the individual." Me. Rev. Stat. tit. 22 § 1711-C(1)(B). The Complaint does not allege that Shields released, transferred, or provided Colby's health care information to the unauthorized third parties who accessed Shields' system without its knowledge. In fact, the Complaint acknowledges the unauthorized access occurred from March 7 to March 21, 2022, prior to when Shields become aware. Doc. 64, ¶¶ 3, 33. Shields cannot have participated in an act of which it was unaware.

Perhaps realizing this, the Complaint alleges a disclosure by "affirmative action of Shields in maintaining the security of its computer systems at levels that did not protect the confidentiality, security, and integrity" of the information. Doc. 64, ¶¶ 327-329. It also alleges that Shields "actively and affirmatively allowed the hackers to see and obtain the health care information." *Id.* ¶ 329. Such allegations are belied by the other factual allegations in the Complaint. Colby may not claim allegedly negligent, unknowing conduct as intentional merely to fit her allegations within the confines of a statute. Colby's ME CHCL claim (Count XV) should be dismissed.

### O.     Plaintiff Buechler's Claim Under the Maryland Consumer Protection Act Should Be Dismissed.

The Maryland Consumer Protection Act ("MD CPA") prohibits "unfair or deceptive trade practices." Md. Code Comm. § 13-301, *et seq.* It carries a professional services exemption, which has been held to apply to medical practices. *See Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 26 (D.D.C. 2019), *on reconsideration in part*, 518 F. Supp. 3d 43 (D.D.C. 2021) (citing *Scull v.*

*Groover, Christie & Merritt, P.C.*, 435 Md. 112, 76 A.3d 1186 (2013)). For that reason, Plaintiff Buechler's MD CPA claim should be dismissed.

Notwithstanding, the MD CPA claim also fails because Shields does not provide medical services in Maryland, and the statute does not apply extraterritorially. *See Thomas v. Kimpton Hotel & Rest. Grp.*, No. 19-CV-01860-MMC, 2020 WL 3544984, at *8 (N.D. Cal. June 30, 2020) (dismissing MD CPA claim by Texas resident without allegations conduct forming basis of claim occurred in Maryland). The MD CPA's self-identified purpose is preventing unfair and deceptive practices "from occurring in Maryland." *See* Md. Code Ann., Com. Law § 13-102(b)(3). As the court in *Thomas* noted, "[u]nder Maryland law, 'unless an intent to the contrary is expressly stated, acts of the legislature will be presumed not to have any extraterritorial effect.'" 2020 WL 3544984, at *8 (citing *Chairman v. Waldron*, 285 Md. 175, 183-84 (1979)).

The Complaint alleges Buechler is a resident of Maryland and received treatment at Mercy Hospital but does not state where that facility is located. Doc. 64, ¶¶ 41-42. The Complaint's introduction also alleges that Shields "provided healthcare services in the New England region, including Massachusetts, Maine, Maryland, Rhode Island, and New Hampshire." *Id.* ¶ 1. Ignoring that Maryland is not considered part of New England, this incorrect allegation is disproven by Shields' website, which is linked to repeatedly in the Complaint. Doc. 64, ¶ 3 n.1, ¶ 35 n.4. That website indicates that Shields does not operate in Maryland, but rather only in New England.[3] This Court may take judicial notice of this fact, as "[i]n a motion to dismiss, courts 'consider not only the complaint also matters fairly incorporated within it and matters susceptible to judicial notice.'" *See Pietrantoni v. Concept Therapeutics, Inc.*, No. CV 22-10072-WGY, 2022 WL 16857262, at *4 (D. Mass. Nov. 10, 2022) (quoting *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st

---

[3] https://shields.com/find-location/

Cir. 2003)). Judicial notice can be taken where a fact is capable of accurate and ready determination through sources whose accuracy cannot reasonably be questioned. *Id.* (citing *Crimson Galeria Ltd. P'ship v. Healthy Pharms, Inc.*, 337 F. Supp. 3d 20, 30 (D. Mass. 2018); Fed R. Evid. 201(b)). Accordingly, as the Court can readily determine that Shields does not operate in and did not provide services to Buechler in Maryland, his MD CPA claim (Count XVI) should be dismissed with prejudice.

**P.   Plaintiff Buechler's Claim Under the Maryland Personal Information Act Should Be Dismissed.**

The Maryland Personal Information Protection Act ("MD PIPA") generally prohibits insufficient or unreasonable data security procedures and practices and also requires notice of any breach to be provided "as soon as reasonably practicable." Md. Code Ann., Com. Law §§ 14-3503, 14-3504. However, the MD PIPA does not create a private cause of action, as multiple courts have acknowledged. *See In re Arthur J. Gallagher*, 631 F. Supp. 3d 573, 596-97 (N.D. Ill. 2022); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1211 (S.D. Fla. 2022); *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1340 (N.D. Ga. 2019). As these courts have noted, in the MD PIPA, the Maryland legislature did not express an intention to create a direct private right of action for a violation but instead stated a violation constitutes "an unfair or deceptive trade practice" under the MD CPA. *See In re Mednax*, 603 F. Supp. 3d at 1211. Accordingly, Plaintiff Buechler's MD PIPA (Count XVII) claim should be dismissed with prejudice.

**Q.   Plaintiff Buechler's Claim Under the Maryland Social Security Number Privacy Act Should Be Dismissed.**

The Complaint alleges Shields violated the Maryland Social Security Number Privacy Act ("MD SSNPA") by transmitting the Social Security numbers of Plaintiff Buechler and Maryland

subclass members over the internet without a secure connection or encryption. Doc. 64, ¶ 364 (citing Md. Code Ann., Com. Law § 14-3402). At the outset, the Md. SSNPA does not create a private cause of action and so should be dismissed. *See Carmax Auto Superstores, Inc. v. Sibley*, 194 F. Supp 3d 392, 402 (D. Md. 2015), *aff'd*, 730 F. App'x 174 (4th Cir. 2018).

Regardless, no allegations in the Complaint support the claim that Shields transmitted anything over the internet, particularly since, as discussed above, the Incident was the result of unauthorized third parties' actions. In another data breach matter, a federal court dismissed a claim under the MD SSNPA when the allegations did not establish the defendant "initiated" any transmission of Social Security numbers over the internet. *See In re Equifax*, 362 F. Supp. 3d at 1343 (also rejecting plaintiffs' argument that defendant's conduct in being subject to data breach was "so egregious it was essentially an active participant in in initiating the transmission"). Accordingly, Plaintiff Buechler's MD SSNPA claim (Count XVIII) should be dismissed with prejudice.

### R. Plaintiff Tapper's Claim Under the New Hampshire Consumer Protection Act Should Be Dismissed.

The New Hampshire Consumer Protection Act ("N.H. CPA") generally prohibits "any unfair or deceptive act or practice in the conduct of any trade or commerce." N.H. Rev. Stat. Ann. § 358-A:2. The Complaint merely alleges that Shields violated the N.H. CPA by failing to maintain and implement adequate data security procedures. But such an act, even if proven, has not been deemed an unfair or deceptive act or practice under the N.H. CPA. There is no case law to this effect. The N.H. CPA enumerates several types of acts and practices, but none contemplate data security practices. *See* N.H. Rev. Stat. Ann. § 358-A:2, *et seq.* The Complaint cites to certain acts regarding misrepresentations of acts and services, but it does not allege anywhere that Shields ever represented it had particular data security practices or procedures. Doc. 64, ¶ 370. The Complaint's

purported unfair or deceptive acts inherently do not rise to this level. Accordingly, Plaintiff Tapper's N.H. CPA (Count XIX) claim should be dismissed with prejudice.

**S.      Plaintiff Tapper's Claim Under the New Hampshire Notice of Security Breach Statute Should Be Dismissed.**

The Complaint alleges that Shields failed to "timely disclose" the Incident to Plaintiff Tapper in violation of the New Hampshire Notice of Security Breach statute ("N.H. NSB"), which requires notification of a data breach "as soon as possible." Doc. 64, ¶ 388; N.H. Rev. Stat. Ann. § 359-C:20(I)(a). But this claim ignores the text of the statute, which requires an entity to "promptly determine the likelihood that the information has been or will be misused." N.H. Rev. Stat. Ann. § 359-C:20(I)(a). Here, the Complaint acknowledges Shields became aware of the Incident on March 28, 2022 and that it "immediately launched an investigation into this issue." Doc. 64, ¶¶ 3, 36. The Complaint appears to claim that because Shields did not notify Plaintiff Tapper immediately, before Shields had even determined what information was impacted and the likelihood of misuse, as required by the N.H. NSB, it has committed a violation. This does not constitute a violation of the N.H. NSB but rather only Tapper's own timeline. The Complaint is devoid of any allegations as to why the approximately three months was an unreasonable period to investigate the Incident, but instead merely alleges a non-immediate response is violative. Accordingly, Plaintiff Tapper's N.H. NSB (Count XX) claim should be dismissed.

**T.      Plaintiffs' Massachusetts Consumer Protection Act Claim Should Be Dismissed.**

The Massachusetts Consumer Protection Act ("MA CPA") requires a plaintiff to send a written demand for relief at least thirty days prior to filing a claim, describing the allegedly unfair or deceptive act or practice and the injury suffered. M.G.L. c. 93A, § 9(3). The Complaint alleges only that "[a] demand identifying the claimant and reasonably describing the unfair or deceptive

act of practice relied upon and the injury suffered was mailed or delivered to Defendant at least thirty days prior to the filing of a pleading alleging this claim for relief." Doc. 64, ¶ 408. This boilerplate language is inadequate—it does not allege each Plaintiff sent a demand letter prior to when they each filed their own complaint.

Failure to send the pre-suit demand letter is fatal to a claim under c. 93A, § 9. *City of Boston v. Aetna Life Ins. Co.*, 399 Mass. 569, 574, 506 N.E.2d 106, 109 (1987). The allegation of such a demand letter being timely sent "is not merely a procedural nicety, but rather a 'prerequisite to suit.'" *Gozzo v. Wells Fargo Bank, NA*, No. CV 16-10499-LTS, 2017 WL 1075071, at *4 (D. Mass. Mar. 21, 2017) (quoting *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004)).

Although the letter at issue here was not attached to the Complaint nor expressly incorporated by it and thus generally inappropriate for consideration on a motion to dismiss, the First Circuit Court of Appeals has made "'narrow exceptions for documents the authenticity of which are not disputed by the parties…for documents central to plaintiffs' claims; or for documents sufficient referred to in the complaint.'" *Flores v. OneWest Bank, F.S.B.*, 886 F.3d 160, 167 (1st Cir. 2018) (quoting *Watterson v. Page*, 987 F.3d 1, 3 (1st Cir. 1993). Included with Shields' Motion to Dismiss is Plaintiffs' purported pre-suit demand letter, sent by Plaintiffs' counsel and dated September 30, 2022. *See* Declaration of Jordan S. O'Donnell ("O'Donnell Decl."), Ex. 1. As this letter is from Plaintiffs' counsel, its authenticity cannot be disputed.

The letter is insufficient under the MA CPA and requires dismissal of Plaintiffs' claim. It does not name the "claimant(s)," as required. *Simas v. House of Cabinets, Inc.*, 53 Mass. App. Ct. 131, 139, 757 N.E.2d 277, 283 (2001) (citing Mass. Gen. Laws. c. 93A, § 9(3). Although it refers to the consolidated litigation, the demand does not make clear to Shields which Plaintiffs would be in the forthcoming consolidated class action complaint. This is relevant because the Complaint

names Plaintiffs who had not yet been named in any of the consolidated actions, namely Kennedy, Pimental, and Tapper. The letter also does not identify any alleged injuries, which renders it insufficient under the MA CPA. *See Spilios v. Cohen*, 38 Mass. App. Ct. 338, 342, 647 N.E.2d 1218, 1221 (1995) (citing *Spring v. Geriatric Authy. of Holyoke*, 394 Mass. 274, 288, 475 N.E.2d 727 (1985)). Instead, the letter merely states "Plaintiffs and the Class have suffered and continue suffer financial losses and increases data security risks." As for the relief requested, it vaguely alleges data security measures and asks that Shields "[p]ay Plaintiffs and the Class for the costs incurred as result of Shields' violations." Yet those costs are unidentified. This deprives Shields of the opportunity to fulsomely respond. *See Thorpe v. Mutual of Omaha Ins. Co.*, 984 F.2d 541, 544 (1st Cir. 1993) (Massachusetts courts have said a demand letter must define the injury and relief demanded to permit the prospective defendant with an opportunity to review the facts and law involved and see if the requested relief should be granted or denied.).

Shields also acknowledges that Plaintiff Colby's counsel had sent Shields' counsel a purported pre-suit demand letter. *See* O'Donnell Decl., Ex. 2. However, that letter was dated and emailed on July 27, 2022, the same day Plaintiff Colby's lawsuit was filed. *See* Docket No. 1:22-cv-11209-PBS. It thus was not sent the required thirty days prior to initiating the lawsuit. Moreover, it was emailed to Shields' counsel, who had not yet appeared in Plaintiff Colby's action. This is impermissible under section 9(3), which requires the demand letter "be mailed or delivered to any prospective respondent." The respondent's presumed counsel is not a permitted recipient. Colby's letter also fails to identify any actual alleged damages, and so is inadequate for the reasons discussed above.

Plaintiffs' failure to comply with the MA CPA's pre-suit requirements requires dismissal of their claim (Count XXI) with prejudice.

## V.       CONCLUSION

WHEREFORE, Defendant Shields Health Care Group, Inc., requests that this Court dismiss Plaintiffs' declaratory judgment claim (Count X) without prejudice and the remaining counts in Plaintiffs' Class Action Complaint with prejudice, and all other relief it deems just and proper. If the Court does not dismiss the declaratory judgment count without prejudice for lack of standing, it too should be dismissed with prejudice for failure to state a claim.

Dated: August 23, 2023                    Respectfully submitted,

                                          */s/ Jordan S. O'Donnell*
                                          Jordan S. O'Donnell, #BBO 684001
                                          Claudia D. McCarron (*pro hac vice*)
                                          Mullen Coughlin LLC
                                          426 W. Lancaster Avenue, Suite 200
                                          Devon, PA 19333
                                          Telephone: (267) 930-4106
                                          jsodonnell@mullen.law
                                          cmccarron@mullen.law

                                          *Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2023, a copy of this motion was filed electronically and served on all counsel of record through the electronic filing system.

                                          */s/ Jordan S. O'Donnell*
                                          Jordan S. O'Donnell