**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **In re Shields Health Care Group, Inc. Data Breach Litigation** | **Case No.: 1:22-cv-10901-PBS**<br><br>**(Leave to file and to file in excess of page limit granted 10/12/2023 [Doc. 103])** |

**DEFENDANT SHIELDS HEALTH CARE GROUP, INC.'S**
**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

## I.  INTRODUCTION

Defendant Shields Health Care Group, Inc. ("Shields") submits the following reply in support of its Motion to Dismiss (Doc. 85) Plaintiffs' Consolidated Class Action Complaint ("Complaint") (Doc.64). As discussed in Sheilds' motion and accompanying Memorandum in Support (Doc. 86) (together, "Motion"), each fail to state a claim for each of Plaintiffs' causes of action. As discussed below, Plaintiffs' Opposition in Response ("Opposition") (Doc. 98) misapplies or misinterprets case law, ignores key deficiencies within the causes of action, and contradicts the Complaint's own allegations.

Plaintiffs' Opposition also claims they are voluntarily dismissing their claims for negligence *per se* (Count II); breach of confidence (Count IX); declaratory judgment (Count X); violation of the Maine Uniform Deceptive Trade Practices Act (Count XIV); Maryland Consumer Protection Act (Count XVI); Maryland Personal Information Act (Count XVII); and Maryland Social Security Number Privacy Act (Count XVIII). Doc. 98, p. 1, n. 1. As Plaintiffs acknowledge

they have failed to state these claims, they should be dismissed with prejudice. This also requires striking the proposed Maryland sub-class as there are no remaining claims on its behalf.

II.        **ARGUMENT**

    A.        **Plaintiffs' Negligence Claim Should Be Dismissed.**

        *1.        The Opposition Misinterprets and Misapplies Decisions in an Effort to Evade Dismissal Pursuant to the Economic Loss Doctrine.*

In response to the economic loss doctrine barring their negligence claim, Plaintiffs' Opposition chiefly relies on Judge Stearns's recent (but non-binding) opinion in *Webb v. Injured Workers Pharmacy, LLC*, in which Judge Stearns only notes that "other (non-precedential) cases have held" the personal injury requirement of the economic loss doctrine *can* be satisfied by a claim of emotional distress, and that the plaintiffs in *Webb* had alleged "palpable emotional distress." *Webb*, No. 22-cv-10797, 2023 WL 5938606, at *3 (D. Mass. Sep. 11, 2023). But Judge Stears did not address the requirement under Massachusetts law for a physical manifestation of objective symptomatology to recover for negligently inflicted emotional distress. *See Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982). Despite the Opposition's contention that negligent infliction of emotional distress is an independent cause of action, the requirement does apply in the context of the economic loss doctrine, which Judge Stearns had previously noted. *See Brown v. Quest Diagnostics, LLC*, No. CIV.A 08-11517-RGS, 2008 WL 5236033, at *3 (D. Mass. Dec. 16, 2008) (rejecting that emotional distress unaccompanied by allegations of physical harm manifested by objective symptomatology overcomes economic loss doctrine). This is logical— otherwise plaintiffs could plead negligent infliction of emotional distress solely to evade the economic loss doctrine, despite the elements being nearly the same.

Even if this Court agreed that emotional distress meets the personal injury requirement of the economic loss doctrine, the Complaint's allegations remain insufficient. In *Webb*, Judge Stears

cited two cases that included highly specific allegations of emotional distress. 2023 WL 5938606, at *3 (citing *Maio v. TD Bank, N.A.* No. 1:22-CV-10578-AK, 2023 WL 2465799, at *4 (D. Mass. Mar. 10, 2023) (allegations of "lost sleep, anxiety, and depression"); *McCormick v. Lischynsky*, No. 19-10433-FDS, 2019 WL 342942, at *5 (D. Mass. July 30, 2019) ("severe emotional distress, with physical manifestations thereof"). Here, the Opposition only makes broad allegations of emotional distress and allege no physical manifestation, as required under Massachusetts law. Doc. 64, ¶¶ 51, 61, 72, 85, 97. It claims the Complaint also alleges "annoyance, unease, anxiety and increased concerns" but these are not physical manifestations.

Plaintiffs' Opposition also largely ignores the cases cited by Shields that have applied the economic loss doctrine in the context of data breaches. In *Webb*, Judge Stearns did not "reject" *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489 (1st Cir. 2009), as he instead found, as discussed above, that plaintiffs' specific allegations of emotional distress potentially constituted a physical injury. *See Webb*, 2023 WL 5938606, at *3. Such a conclusion cannot be reached here based on the Complaint's vague allegations. Despite the Opposition's suggestion, *Portier v. NEO Tech. Sols.* did not "[find] that Massachusetts is among the states that 'permit recovery for economic losses in data breach cases." Doc. 98, p. 17.[1] Rather, *Portier* found "support for Massachusetts to join the other states" that do, based on an analogy to Pennsylvania law. 2019 WL 7946103, at *22.

The non-binding *Shedd* case also did not reject the economic loss doctrine in a healthcare setting or find that a special relationship exists under the circumstances, as the Opposition claims. Doc. 98, p. 17 (citing *Shedd v. Sturdy Mem'l Hosp.*, No. 2173CV00498C, 2022 WL 1102524, at *8 (Mass. Super. Apr. 5, 2022)). Rather, *Shedd* only found there "may well" be such a relationship.

---

[1] All references to page numbers are to the ECF header, not Plaintiffs' separate page numbers.

2022 WL 1102524, at *8. The Opposition provides no binding Massachusetts case law finding a relationship exists under the circumstances here. Critically, as the Opposition acknowledges, *Portier*, which *Shedd* relied on, involved PII being provided as a condition of employment, facts not present here. 2019 WL 7946103, at *18, *22. Under the circumstances and based on the Complaint's own allegations, the Court should conclude their negligence claim is barred by the economic loss doctrine.

2.  *The Complaint Does Not Allege Cognizable Injuries to Support Plaintiffs' Negligence Claim.*

The Opposition's first defense of Plaintiffs' negligence claim is citation to the First Circuit Court of Appeals' recent decision in *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023). That decision, as the Opposition acknowledges, solely concerned Article III standing and did not evaluate challenges made to causes of action, including negligence and its requirement for actual loss. Doc. 98, pp. 15-16. To the extent the Opposition relies on the First Circuit's injury-in-fact analysis in *Webb* to support its claim that the Complaint alleges actual loss, as required under Massachusetts law, they have entirely different standards and requirements.

The Opposition again uses Judge Stearns's recent nonbinding opinion in *Webb* as supporting Plaintiffs Colby, Kennedy, Pimental, and Tapper's claim for damages. Doc. 98, pp. 13-14. However, the quoted provision of that opinion, finding the plaintiffs' conclusory damages allegations sufficient to support their negligence claim, omits the requirement under Massachusetts law for a "measurable loss," which *Portier* noted is required. *See Webb*, 2023 WL 25938606, at *2; *Portier*, 2019 WL 7946103, at *15. The Complaint's claims of lost time consist only of vague allegations about checking online accounts and looking up phone numbers on the internet. Doc. 64, ¶¶ 58-59, 67, 80, 93. The Opposition does not cite to activities or obligations Plaintiffs were unable to perform or meet as a result, particularly as monitoring accounts is what individuals

predisposed to concerns about their privacy (which Plaintiffs are alleged to be) would routinely do anyway.

The Complaint's allegations of generalized distress are also insufficient. As referenced above, the Opposition argues that negligent infliction of emotional distress is a separate tort from negligence. Doc. 98, p. 20, n. 14. But courts have also applied the physical harm requirement to negligence claims. *See Brown*, 2008 WL 5236033. Regardless, Plaintiffs cannot evade the objective symptomatology requirement merely by pleading their emotional distress damages under a negligence claim rather than as a separate cause of action. The requirements for negligent infliction of emotional distress are negligence, emotional distress, causation, physical harm manifested by objective symptomatology, and that a reasonable persons would have suffered emotional distress under the circumstances. *Cote v. Ford's Hometown Servs., Inc.*, 91 Mass. App. Ct. 1122, at *2 (2017) (citing *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 132 (1993)). The requirements for negligence apply, plus a higher standard to recover for purported emotional distress damages. *See id.* Here, the Complaint does not allege any objective symptomatology, despite the Opposition's general reference to approximately 80 paragraphs in their Complaint. Doc. 98, p. 20, n. 14.

Plaintiffs' Opposition does not address the Complaint's failure to allege an attempt to sell their PII or that they were forced to accept a decreased price, necessary to support their claims for diminution in value of PII. The Complaint does not allege Plaintiffs have incurred any actual loss related to their PII's value. *See Portier*, 2019 WL 7946103, at *15. The Opposition instead relies solely on other decisions, with no analysis of their distinct allegations.

Lastly, the Opposition miscites and misapplies *Shedd* regarding when arguing future harm constitutes an actual loss to sustain their negligence claim. Doc. 98, p. 22. The quotations from

*Shedd* are a summary of a medical monitoring case, not the holding from a binding Massachusetts opinion regarding future credit monitoring after a data breach. *See Shedd*, 2021 WL 1102524, at *6. In *Shedd*, the plaintiffs had also alleged their PII was on the dark web and specifically made a claim for the cost of future credit monitoring. *Id.* Here, the Complaint does not allege Plaintiffs were informed their information is on the dark web and does not seek damages for ongoing monitoring costs.

Accordingly, Plaintiffs' negligence claim (Count I) should be dismissed with prejudice.

**B.     Plaintiffs' Breach of Contract Claims Should Be Dismissed.**

> *1.     Shields' Privacy Practice Statement is Not an Express Contract with Plaintiffs.*

The Opposition claims that the Complaint alleges an express contract between Plaintiffs and Shields for data security based solely on Shields' Privacy Practice statement on its website. Doc. 98, p. 23. Its label of the Privacy Practice statement as an "agreement" is unsupported, however. Under Massachusetts law, "[t]he essential elements of a valid contract are an offer, acceptance, and consideration." *Conte v. Bank of America, N.A.*, 52 F. Supp. 3d 265, 268 (D. Mass. 2014) (citing *Vadnais v. NSK Steering Sys. Am., Inc.*, 675 F. Supp. 2d 205, 207 (D. Mass. 2009)). The Complaint does not allege the Privacy Practice was a bargained-for agreement between Plaintiffs and Shields, that it included an "offer" to Plaintiffs, or that any Plaintiffs "accepted" it. The count for breach of express contract does not reference the online Privacy Practice. Doc. 64, ¶¶ 202-206. Plaintiffs' Complaint instead alleges the express contract was a "written agreement" related to medical services, which the Privacy Practice is clearly not. *Id.*

Other courts have rejected unsupported claims that a defendant's posted privacy statement constitutes an express contract for data security. *See, e.g., Doe v. Regents of Univ. of Cal.*, No. 23-cv-00598-WHO, 2023 WL 3316766, at *6 (N.D. Cal. May 8, 2023); *Wallace v. Health Quest*

*Systems, Inc.*, No. 20 CV 545 (VB), 2021 WL 1109727, at \*10 (S.D.N.Y. Mar. 23, 2021); *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at \*4 (D. Ariz. Dec. 20, 2017). The Opposition only relies on *In re Marriott, Int'l, Inc.*, in support of this argument, but its facts are distinguishable because the *Marriott* complaint alleged that the defendant's customers had agreed to be subject to the terms and conditions of the privacy statement. 440 F. Supp. 3d 447, 483 (D. Md. 2020). No such allegations are present here.

> 2.    *The Opposition Does Not Point to Allegations Supporting the Existence of an Implied Contract.*

Plaintiffs' Opposition also fails to overcome the Complaint's dearth of statements or conduct by Shields suggesting an implicit agreement to protect or safeguard personal information in exchange for consideration. Instead, it misapplies a decision analyzing Maine law specific to the provision of credit card information in a commercial transaction, omitting those critical details from their quotation. Doc. 98, p. 24 (quoting *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 158-59 (1st Cir. 2011)). The First Circuit's conclusion in *Anderson* that a jury could reasonably find an implied contract under those specific consumer circumstances does not mean an implicit agreement exists broadly in all other situations involving the exchange of PII. The Opposition also again cites *Shedd*, a non-binding decision that did not analyze whether the defendant's conduct or statements supported the existence of an implied contract, as required. *See Shedd*, 2022 WL 1102524, at \*9-10.

Lastly, Plaintiffs' attempt to discredit *Price Chopper* misses the mark. It is not cited based on the similarity of facts to those here, but rather because it cites the requirements for an implied contract under Massachusetts law, which the Opposition does not address. *See Price Chopper, Inc. v. Consol. Beverages, LLC*, No. 09-10617-FDS, 2011 WL 901817, at \*5 (D. Mass. Mar. 11, 2011) (citing *T.F. v. B.L.*, 442 Mass. 522, 526-27, 813 N.E.2d 1244 (2004)).

3.      *The Incident Notice Does Not Violate the Breach of Covenant of Good Faith and Fair Dealing.*

The Opposition contends the Complaint's allegations that Shields did not inform Plaintiffs of the Incident for nearly three months (why the Opposition suggests four months is unclear) and that the notice lacked certain details constitutes bad faith. Doc. 98, p. 26. But the count for breach of the implied covenant of good faith and fair dealing does not reference the notice at all. Doc. 64, ¶¶ 214-222. Rather, those allegations only concern the alleged failure to protect information as allegedly required by purported contracts between Plaintiffs and Shields. The Complaint does not allege those contracts required notice of a security incident to be provided within a particular time period or contain particular details. The Opposition cannot highlight any conduct that could be deemed bad faith, regardless of its relationship to the Complaint's allegations. Moreover, the Opposition does not explain how the purported delay in notice (which ignores that Shields performed an investigation after discovering the Incident) is in fact bad faith—particularly when it does not appear to have prevented them from allegedly acting to protect themselves. Nor does it explain why the notices should have contained the cause or extent of the Incident or the total number of individuals affected, information irrelevant to each Plaintiff who was only purportedly attempting to take mitigative action to protect themselves.

Lastly, the Opposition's comparison of the facts of *Zoll Med. Corp.* to those here ignore key distinctions, including that the former involved a dispute between contracting businesses and allegations of both misrepresentations and a failure to cooperate. Doc. 98, p. 26, n. 20 (citing *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 585 F. Supp. 3d 128, 138 (D. Mass. 2022)).

Accordingly, Plaintiffs' claims for breach of express contract (Count IV), breach of implied contract (Count V), and breach of the implied covenant of good faith and fair dealing (Count VI) should be dismissed with prejudice.

8

### C.   Plaintiffs' Negligent Misrepresentation Claims Should Be Dismissed.

The Opposition's argument in support of Plaintiffs' negligent misrepresentation claim also focuses on Shields' Privacy Practice statement, even though their Complaint's allegations do not. Doc. 98, pp. 27-28. The Complaint only alleges that Shields misrepresented facts "pertaining to the provision of health care services" by representing it would maintain adequate data privacy and security and comply with federal and state laws. Doc. 64, ¶¶ 224-225. The Privacy Practice statement is not referenced in the negligent misrepresentation count. *Id.* ¶¶ 224-229.

As Shields argues in its Motion, the Complaint does not allege that Shields supplied any false information relative to its data security. This includes the Privacy Practice statement, which as Shields argues, does not represent that Shields had a certain level or standard of data security, which it then failed to deliver. The Opposition's only response to this indisputable fact is to state Shields failed to cite case law requiring an online privacy practice to contain such detail to be misleading. Doc. 98, p. 27. This misapprehends the argument.

The Opposition ignores the content of the Privacy Practice statement and instead focuses on Plaintiffs' own subjective interpretations. As the Complaint admits, the Privacy Practice statement contains Shields' acknowledgement of its responsibility by law to maintain the privacy of health information and states that Shields takes the responsibility seriously. Doc. 64, ¶ 101. Unable to point to a statement that is misleading or misrepresentative, the Opposition argue this means Shields "presumably does" maintain its patients' privacy and that "implicit" in the Privacy Practice statement is *"the patient's* understanding that the confidentiality of patient information would be maintained" (emphasis added). Doc. 98, p. 27. Yet a negligent misrepresentation claim requires a defendant to have "supplied false information." *Monks v. Astoria Bank*, No. CV 16-12084-FDS, 2017 WL 2435278, at *6 (D. Mass. June 5, 2017) (quoting *First Marblehead Corp.*

*v. House*, 473 F.3d 1, 9 (1st Cir. 2006)). The Complaint does not allege any false information, and Plaintiffs' own after-the-fact interpretations of such statements do not suffice. The Opposition argues Shields did not exercise reasonable care, but the only statements it is referring to are an acknowledgement of a legal responsibility and statement that the responsibility is taken seriously.

The Opposition also misconstrues Shields' argument that the Complaint does not identify any warnings about the inadequacy of *its* data privacy, despite alleging they are why Shields should have known its purported representations were untrue. Doc. 64, ¶ 226. The Opposition refers to general warnings issued by law enforcement and industry groups regarding the risk of data breaches but points to no warnings related to Shields' data security, which is purportedly the basis for the claim. Doc. 98, pp. 27-28.

Accordingly, Plaintiffs' negligent misrepresentation claim (Count VI) should be dismissed with prejudice.

### D.     Plaintiffs' Invasion of Privacy Claim Should Be Dismissed.

Despite the Opposition's assertion, Shields does not contest that there is an actionable right of privacy by statute in Massachusetts. Doc. 98, p. 28. Rather, Shields argues that Plaintiffs' invasion of privacy claim is improperly brought under the common law, which is not recognized in Massachusetts and subjects the claim to dismissal. *See Axford v. TGM Andover Park, LLC*, No. 19-cv-11540-ADB, 2021 WL 681953, at *13 (D. Mass. Feb. 22, 2021) (citing *Spencer v. Roche*, 755 F. Supp. 3d 250, 271 (D. Mass. 2010)). The Complaint does not reference Mass. Gen. Laws chapter 214.

Shields nonetheless argues in its Motion that Plaintiffs' claim would fail even if properly pled. Among the reasons is the failure to allege the required dissemination and disclosure of Plaintiffs' PII/PHI. In response, the Opposition claims Shields committed a dissemination and

disclosure "by failing to implement proper data security." Doc. 98, pp. 28-29. The Opposition takes an alleged wrongdoing—inadequate data security—and then just calls it disclosure and dissemination without any regard for those terms' definitions. In fact, "disclose" is defined as "to make known or public" or "to expose to view." [2] "Disseminate" is defined as "to spread abroad as though sowing seed" or "to disperse throughout."[3] The Opposition fails to explain how allegedly having inadequate data security, through which a third party impermissibly and unknowingly accesses data, meets those definitions. Instead, it just claims Shields failed to cite case law that rejects their tortured definitions. Doc. 98, p. 29. The Opposition's further reliance on *Shedd*, which did not consider the above, also does not help the argument. 2022 WL 1102524, at *11.

The Opposition also states intent is not required for an intrusion upon seclusion claim by citing cases brought under different invasion of privacy theories. Doc. 98, p. 29; *see Polay v. McMahon*, 468 Mass. 379, 380 (2014) (involving intentional acts to harass neighbors); *Shedd*, 2022 WL 1102524, at *11 (only analyzing public disclosure theory); *Barnes v. Town of Webster*, No. 042420, 2005 WL 2864801, at *1 (Mass. Super. Oct. 11, 2005) (analyzing disclosure of public facts related to publication in newspaper of medical and psychological test results). It then misinterprets and miscites *Cook*. Doc. 98, pp. 29-30. As Shields' Motion notes, *Cook* itself identifies that intrusion upon seclusion involves an intentional intrusion. *Cook v. WHDH-TV, Inc.*, No. 941269, 1999 WL 1327222, at *5, n.7 (Mass. Super. Mar. 4, 1999). The Opposition ignores this and instead quotes a separate requirement that conduct be unreasonable or unjustified, which does not eliminate the requirement for intentionality. Doc. 98, pp. 29-30. Lastly, the Opposition

---

[2]  Merriam-Webster. (n.d.). Disclose. In *Merriam-Webster.com dictionary*. Retrieved October 19, 2023, from https://www.merriam-webster.com/dictionary/disclose

[3]  Merriam-Webster. (n.d.). Disseminate. In *Merriam-Webster.com dictionary*. Retrieved October 19, 2023, from https://www.merriam-webster.com/dictionary/disseminate

states Plaintiffs disagree with *Webb's* holding that invasion of privacy is an intentional tort based on a misreading of one of multiple cases that Judge Stearns cited. Doc. 98, p. 24, n. 23. In that case, Your Honor, after unambiguously stating invasion of privacy is an intentional tort in Massachusetts, found no facts plausibly suggesting an intentional disclosure or unauthorized access. *Elliott-Lewis v. Laboratories*, 378 F. Supp. 3d 67, 71 (D. Mass. 2019). Despite the Opposition's contention, this conclusion does not mean that merely alleging one element for an invasion of privacy claim renders the other unnecessary.

Plaintiffs' invasion of privacy claim (Count VII) should be dismissed with prejudice.

**E.      Plaintiffs' Breach of Fiduciary Duty Claim Should Be Dismissed.**

The Opposition also relies on *Webb* to support the existence of a fiduciary duty under the circumstances here, but that decision involved a pharmacy and relied on a Massachusetts pharmaceutical regulation governing confidentiality and two non-data breach decisions generally finding pharmacists owe a fiduciary duty to protect confidentiality. *See Webb*, 2023 WL 5938606, at *5 (citing *Kelly v. CVS Pharmacy, Inc.*, 23 Mass. L. Rptr. 87 (Mass. Super. Ct. 2007); *Weld v. CVS Pharmacy, Inc.*, 10 Mass. L. Rptr. 217 (Mass. Super Ct. 1999); 247 Mass. Code Regs. 9.01(19)). Plaintiffs' Opposition does not engage with the requirements for breach of fiduciary duty in Massachusetts or cite cases where a Massachusetts court has found such a duty exists in the data privacy context.

Plaintiffs' invasion of privacy claim (Count VIII) should be dismissed with prejudice.

**F.      Plaintiffs' Unjust Enrichment Claim Should Be Dismissed.**

Plaintiffs' Opposition, like their Complaint, fails to allege how it is unjust for Shields to retain the money it was paid for the health care services it provided to Plaintiffs. In response to Shields' argument that the Complaint does not allege data security was a part of these transactions,

the Opposition points only to an allegation that Plaintiffs' payments should have been used to pay for data security. Doc. 98, pp. 31-32 (citing Doc. 64, ¶ 274). But the allegation, again, does not support that data security was part of these transactions. The Opposition then claims that the "use of reasonable and adequate data security is an inherent part of reasonable business practices," which is not alleged in the Complaint or otherwise supported.

Unable to point to specific allegations to support Plaintiffs' unjust enrichment claim, the Opposition again relies on Shields' Privacy Practice statement (which is not referenced within the unjust enrichment claim) and Plaintiffs' own after-the-fact, subjective interpretation of it. It argues that a "plausible interpretation" of the Privacy Practice statement's reference to Shields' legal responsibility to maintain privacy is that money needed to protect privacy was included in the payments Plaintiffs made. Doc. 98, p. 32. But there is yet again no support for such a conclusion provided, and the Complaint does not allege anyone interpreted the Privacy Practice statement to mean as much. The Opposition also does not explain how such an interpretation, even if justified and properly alleged, in turn means the transactions for medical services included data security, such that Shields unjustly retained funds.

The Opposition's criticisms of *Global Investors Agent Corp.* and *Webb* again misses the mark. Doc. 98, p. 32, n. 24. Shields cited *Global Investors Agent Corp.* for its statement that unjust enrichment is based on the parties' reasonable expectations. *Global Investment Agent Corp. v. Nat'l Fire Ins. Co. of Hartford*, 76 Mass. App. Ct. 812, 826 (2010). That it involved a jury instruction is irrelevant, as Shields does not rely on factual similarities. As the Opposition notes, in *Webb*, Judge Stearns dismissed the unjust enrichment claim because the plaintiffs failed to allege they had paid extra for data security that was promised but not received. *See* 2023 WL 5938606,

at *4. The same is true here, and the Opposition's newfound and repeated reliance on the Privacy Practice statement does not change that analysis.

Accordingly, Plaintiffs' unjust enrichment claim (Count XI) should be dismissed with prejudice.

### G.    Plaintiffs Kennedy and Pimental's Claim Under the Rhode Island Deceptive Trade Practices Act Should Be Dismissed.

As noted in Shields' Motion, Plaintiffs Kennedy and Pimental's Rhode Island Deceptive Trade Practices Act ("R.I. DTPA") claim is subject to dismissal under the safe harbor exemption, as the conduct at issue is regulated by government agencies and laws. *See Patane v. Nestle waters N. Am., Inc.*, 478 F. Supp. 3d 318, 353 (D. Conn. 2020). The Opposition's claim that "data privacy and security practices in connection with a purchase of health care services" is not monitored or regulated by any governmental agency is belied by the Complaint's plain language. The Opposition claims that neither the FTC Act or HIPAA "were promulgated or enforced to regulate the specific conduct challenged here." Doc. 98, p. 34. But as noted in Shields' Motion, the Complaint alleges that Shields failed to meet obligations, requirements, or standards issued by or promulgated under the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45; the Health Insurance Portability and Accountability Act, 42 U.S.C. §§ 1302d, *et seq.* ("HIPAA"), and the U.S. Department of Health and Human Services' Office of Civil Rights. Doc. 64, ¶¶ 7, 124-138, 289.[4]

---

[4] For example, the Complaint alleges: "The HIPAA Breach Notification Rule…also required Defendant to provide notice of the breach…" Doc. 64, ¶ 126. "Defendant's Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations. *Id.* ¶ 127. "Shields was also prohibited by the Federal Trade Commission Act…" *Id.* ¶ 128. "The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices." *Id.* ¶ 129. "The FTC has brought numerous enforcement actions against businesses for failing to adequately and reasonably protect customer data…" *Id.* ¶ 132.

The Opposition also attempts to shift the goal posts regarding the Complaint's failure to allege that Plaintiffs Kennedy and Pimental are "consumers," as required to state a claim under the R.I. DTPA. The definition of a "consumer" is not at issue; rather, it is the Complaint's failure to plead that Plaintiffs are consumers within their R.I. DTPA claim. Notwithstanding, the Opposition relies on the FTC Act's definition of "consumer" to support this argument, which argues in the same section is inapplicable to the conduct at issue in an effort to avoid the R.I. DTPA's safe harbor exemption. The Opposition's contradictory and unsupported arguments should not be credited.

The R.I. DTPA claim (Count XII) should be dismissed with prejudice.

**H.    Plaintiff Colby's Claim Under the Maine Unfair Trade Practices Act Should Be Dismissed.**

The Opposition again ignores plain language and case law in arguing that Plaintiff Colby's general allegations of lost time, emotional distress, diminution in value of PII, and increased in spam satisfy the damages requirement under the Maine Unfair Trade Practices Act ("ME UTPA"), 5 Me. Rev. Stat. §§ 207, 213(1). As Shields notes in its Motion, the ME UTPA requires a "substantial" loss of money or property. 5 Me. Rev. Stat. § 213(1); *McGahey v. Fed. Nat'l Mortg. Ass'n*, 266 F. Supp. 3d 421, 436 (D. Me. 2017); *McKinnon v. Honeywell, Int'l, Inc.*, 2009 ME 69, ¶ 21. The Opposition does not and cannot argue Colby's alleged vague losses meet this heightened standard.

The Opposition ignores the language within its own cited cases that acknowledge a "substantial" injury is required under the ME UPTA. *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 660 F. Supp. 2d 94, 101-102 (D. Me. 2009) ("Section 213…allows only those private litigants who have lost 'money or property' to sue for actual damages, restitution, and equitable relief."); *see also Anderson v. Hannaford Bros. Co.*, 659 F.3d at 161. The Opposition

only cites the requirements for a loss but ignores that it must be *substantial*. It instead cites the First Circuit's decision in *Webb* regarding injury-in-fact under Article III standing, which is irrelevant to Maine's requirement for substantial injury under the ME UPTA.[5] Doc. 98, p. 34.

The ME UTPA (Count XIII) claim should be dismissed with prejudice.

### I. Plaintiff Colby's Claim Under the Maine Confidentiality of Health Care Information Law Should Be Dismissed.

The Opposition's efforts to save Plaintiff Colby's claim under the Maine Confidentiality of Health Care Information Law ("ME CHCL") each fail. First, it argues such a claim must be brought in federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Doc. 98, p. 35. But CAFA does not mandate that any class action claims be brought in federal court, it just provides jurisdiction for federal courts under certain circumstances. The Opposition provides no support for this proposition.

The Opposition also misreads the ME CHCL. Doc. 98, p. 35. It does not say claims "may be brought" in the Superior Court, as if there is an option for venue. Me. Rev. Stat. tit. 22 § 1711-C(13). Rather, it permits a private cause of action to be brought, and if it is, directs it to be "in the Superior Court where the disclosure occurred." The Opposition's attempt to shift the burden to Shields to analyze where the alleged disclosure occurred misses the point. But the Opposition appears to concede the Complaint alleges the disclosure occurred in Massachusetts, which would render the ME CHCL inapplicable.

The Opposition next re-characterizes the Complaint's allegations to meet the statute's definition of "disclosure." Doc. 98, p. 36. It is unable to point to allegations where Shields

---

[5] In *Webb*, the First Circuit noted it was "not consider[ing] whether the loss of <u>personal</u> time" was a sufficient injury for standing. 72 F.4th at 377, n. 8. Here, Plaintiff Colby only alleges lost time she "otherwise would have spent performing other activities or leisurely events for the enjoyment of life." Doc. 64, ¶ 58. *Webb* does not even support Plaintiff's argument, notwithstanding its inapplicability to the ME UTPA claim.

purportedly released, transferred, or provided health care information. *See* Me. Rev. Stat. tit. 22 § 1711-C(1)(B). Instead, the Opposition only claims that Shields made "active and deliberate choices" (terms not in the Complaint) regarding data security which "allowed *hackers*" to improperly access PHI. Doc. 98, p. 36. The Opposition's claim that Shields "affirmatively allowed the hackers to see and obtain" PHI is wholly unsupported and completely contradictory to the Complaint's allegations. The Opposition cannot re-write their Complaint on the fly or ignore the definition of words to save insufficiently pled and unsupported claims.

Accordingly, Colby's ME CHCL claim (Count XV) should be dismissed.

**J.      Plaintiff Tapper's Claim Under the New Hampshire Consumer Protection Act Should Be Dismissed.**

Shields notes in its Motion that there is no case law finding that the failure to maintain and implement adequate data security constitutes a violation of the New Hampshire Consumer Protection Act ("N.H. CPA"). N.H. Rev. Stat. Ann. § 358-A:2. The Opposition is unable to do so, instead citing other states' consumer protection statutes and requesting an overbroad interpretation of the N.H. CPA. Doc. 98, p. 31.

Plaintiff Tapper's N.H. CPA (Count XIX) claim should be dismissed with prejudice.

**K.      Plaintiff Tapper's Claim Under the New Hampshire Notice of Security Breach Statute Should Be Dismissed.**

In defense of Plaintiff Tapper's claim under the New Hampshire Notice of Security Breach statute ("N.H. NSB"), N.H. Rev. Stat. Ann. § 359-C:20(I)(a), the Opposition again ignores the statute under which a claim is brought and the circumstances at issue here, and instead generally refers to interpretations of other states' notice laws. Doc. 98, p. 38. It ignores that the N.H. NSB requires an entity to "promptly determine the likelihood that the information has been or will be misused" prior to giving notice and that Shields launched a complex investigation upon

discovering the Incident. *See* N.H. Rev. Stat. Ann. § 359-C:20(I)(a); Doc. 64, ¶¶ 3, 36. Plaintiffs' Opposition, like the Complaint, fails to argue that three months was an unreasonable period to investigate the Incident.

Accordingly, Plaintiff Tapper's N.H. NSB (Count XX) claim should be dismissed with prejudice.

**L.      Plaintiffs' Massachusetts Consumer Protection Act Claim Should Be Dismissed.**

Shields argues in its Motion that Plaintiffs' purported demand letter under the Massachusetts Consumer Protection Act ("MA CPA") is inadequate and requires dismissal of the claim because it does not identify any claimants, as required. *See Simas v. House of Cabinets, Inc.*, 53 Mass. App. Ct. 131, 139, 757 N.E.2d 277, 283 (2001) (citing Mass. Gen. Laws. c. 93A, § 9(3)). In response, the Opposition only cites a case finding that not every plaintiff needed to be identified. Doc. 98, p. 39. That distinction is relevant because the letter here identifies no class representatives.

The Opposition does not contest that the letter also fails to identify any specifically alleged injuries, as required under the MA CPA. *See Spilios v. Cohen*, 38 Mass. App. Ct. 338, 342, 647 N.E.2d 1218, 1221 (1995) (citing *Spring v. Geriatric Authy. of Holyoke*, 394 Mass. 274, 288, 475 N.E.2d 727 (1985)). It instead claims Shields should have known what those injuries are based on their use of vague and general terms like "financial losses" and "risks." Doc. 98, p. 40. This argument frustrates the purpose of the MA CPA's pre-suit demand requirement and deprives Shields of an opportunity to make a meaningful response. The Opposition's claim that the letter sufficiently demands relief also misses the mark. Doc. 98, p. 40. Although it cites case law not requiring specification of a dollar amount, it also ignores that the cited case involved specific details regarding the claimant's damages, including medical diagnoses, "thousands of dollars of medical expenses," and the claimant's pre-disability salary. *See Zabilanksy v. American Bldg.*

*Restoration Products, Inc.*, 200101985, 2004 WL 2550458, at *14 (Mass. Super. Ct. Oct. 13, 2004). Here, the letter contains no such details of the alleged damages or anything close to their approximate value. Although the Complaint contains more specific allegations of damages, including one plaintiff's alleged identity theft, those damages were completely omitted from their letter. Plaintiffs do not meet the standard.

Plaintiffs' failure to comply with the MA CPA's pre-suit requirements requires dismissal of their claim (Count XXI) with prejudice.

### M.     Plaintiffs Should Not Be Granted Leave to Amend Their Complaint.

In a footnote, the Opposition seeks leave to amend any dismissed claims. Doc. 98, p. 7, n. 3. But under the circumstances, this is not justified. As demonstrated above, Plaintiffs' claims fail for reasons that cannot be cured by reformed allegations. The economic loss doctrine bars their negligence claim; they have failed to allege the existence of a contract or fiduciary duty; they do not allege any misrepresentations, disclosures of private facts, intentional intrusions, or unjust retention of funds paid; and their statutory claims are inapplicable, exempted, and/or unsupported. Plaintiffs' Complaint is eighty-five pages and more than 400 allegations long. No additional or revised allegations will rectify the inadequacies of the claims.

## III.   CONCLUSION

WHEREFORE, Defendant Shields Health Care Group, Inc., requests that this Court dismiss Plaintiffs' Class Action Complaint with prejudice, and all other relief it deems just and proper.

Dated: October 26, 2023          Respectfully submitted,

*/s/ Jordan S. O'Donnell*
Jordan S. O'Donnell, #BBO 684001
Claudia D. McCarron (*pro hac vice*)
Mullen Coughlin LLC
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
Telephone: (267) 930-4106
jsodonnell@mullen.law
cmccarron@mullen.law

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2023, a copy of this motion was filed electronically and served on all counsel of record through the electronic filing system.

*/s/ Jordan S. O'Donnell*
Jordan S. O'Donnell