# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE SHIELDS HEALTH GROUP, INC DATA BREACH LITIGATION | CASE NO. 1:22-cv-10901-PBS<br><br>Hon. Patti B. Saris |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND DIRECTION OF CLASS NOTICE

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................3

    A.    Background Facts.......................................................................................3

    B.    Federal Procedural History ........................................................................4

    C.    The Second Mediation ...............................................................................7

TERMS OF THE SETTLEMENT..........................................................................8

    A.    The Settlement Awards..............................................................................9

    B.    Service Awards and Attorneys' Fees, Costs, and Expenses ...................12

    C.    Objecting to or Opting-Out of the Settlement.........................................13

    D.    Confidential Termination Provision .........................................................14

ARGUMENT ......................................................................................................14

    I.    The Proposed Federal Action Settlement Class Meets the Requirements
        for Class Certification .........................................................................14

        A.    The Requirements of Rule 23(a) are Satisfied ........................................15

            1.    The Class Is Sufficiently Numerous. ..............................................15

            2.    Commonality Is Satisfied................................................................16

            3.    Typicality Is Satisfied ....................................................................17

            4.    Plaintiffs And Counsel Satisfy the Adequacy Requirement..........18

        B.    The Requirements of Rule 23(b) are Satisfied.........................................20

            1.    Common Issues Predominate...........................................................20

            2.    A Class Action Is Superior .............................................................21

    II.    The Proposed Settlement Agreement is Fair, Reasonable, and Adequate............21

        A.    The Presumption of Reasonableness Applies ...........................................23

          1.       The Settlement Agreement Was Negotiated at Arm's Length ......23

          2.       The Parties Exchanged Sufficient Discovery ...............................24

          3.       The Proponents of the Settlement Are Highly Experienced in Data Breach Class Litigation .....................................................25

          4.       Federal Action Settlement Class Objections.................................26

     B.     Other Factors Support Finding That the Settlement is Fair, Reasonable, and Adequate ...........................................................26

          1.       The Class Representatives and Class Counsel Have Adequately Represented the Class.................................................26

          2.       The Settlement Affords Adequate Relief for the Class in Light of the Facts, Risks, and Costs of Litigation ....................27

          3.       The Settlement Treats Class Members Equitably Relative to Each Other. ...............................................................................29

     C.     The Proposed Notice Is Adequate and Appropriate. .................................30

  III.   The Court Should Preliminarily Appoint Plaintiffs as Federal Action Settlement Class Representatives ........................................................................32

  IV.   The Court Should Preliminarily Appoint Class Counsel......................................32

CONCLUSION.................................................................................................................33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abubaker v. Dominion Dental USA, Inc.*,
   2021 WL 6750844 (E.D. Va. Nov. 19, 2021) ........................................................ 18

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ......................................................................................... 15, 20

*Attias v. CareFirst, Inc.*,
   346 F.R.D. 1 (D.D.C. 2024) ............................................................................... 14

*Barletti v. Connexin Software, Inc.*,
   2024 WL 1096531 (E.D. Pa. Mar. 13, 2024) .................................................. 18, 29

*Bezdek v. Vibram USA Inc.*,
   79 F. Supp. 3d 324 (D. Mass.) ........................................................................ 13, 18

*Bezdek v. Vibram USA Inc.*,
   809 F.3d 78 (1st Cir. 2015) ................................................................................ 22

*Bussie v. Allmerica Fin. Corp.*,
   50 F. Supp. 2d 59 (D. Mass. 1999) .................................................................... 25

*Crowe v. ExamWorks, Inc.*,
   136 F.Supp.3d 16 (D. Mass. 2015) ................................................................ 16, 21

*Engel v. Scully & Scully, Inc.*,
   279 F.R.D. 117 (S.D.N.Y. 2011) ........................................................................ 16

*Garcia-Rubiera v. Calderon*,
   570 F.3d 443 (1st Cir. 2009) .............................................................................. 18

*Giotto v. US Dep't of Homeland Sec., Sec'y*,
   2025 WL 49016 (D.N.H. Jan. 8, 2025) .............................................................. 22

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
   2019 WL 2249941 (S.D. Fla. May 24, 2019) ..................................................... 23

*Hill v State Street Corp.*,
   2015 WL 127728 (D. Mass. Jan. 8, 2015) ......................................................... 30

*Hochstadt v. Boston Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................. 15, 24

*In re Capital One Consumer Data Security Breach Litig.*,
   2022 WL 18107626 (E.D. Va. Sept. 13, 2022) ........................................................ 30

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Maine 2003) ............................................................................ 30

*In re Lupron Mktg. & Sales Pracs. Litig.*,
   345 F. Supp. 2d 135 (D. Mass. 2004) ..................................................................... 22

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
   270 F.R.D. 45 (D. Mass. 2010) ......................................................................... 19, 24

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008) ...................................................................................... 16

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) .................................................................................... 23

*In re Solodyn Antitrust Litig.*,
   2017 WL 4621777 (D. Mass. Oct. 16, 2017) ......................................................... 20

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   309 F.R.D. 482 (D. Minn. 2015) ............................................................................ 15

*Jean-Pierre v. J&L Cable TV Servs., Inc.*,
   538 F. Supp. 3d 208 (D. Mass. 2021) ............................................................... 14, 29

*Lapan v. Dick's Sporting Goods, Inc.*,
   2015 WL 8664204 (D. Mass. Dec. 11, 2015) ........................................................ 30

*McLaughlin v. Liberty Mut. Ins. Co.*,
   224 F.R.D. 304 (D. Mass. 2004) ............................................................................ 20

*Meaden v. HarborOne Bank*,
   2023 WL 3529762 (D. Mass. May 18, 2023) .................................................... 21, 22

*Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*,
   2020 WL 1495903 (D. Mass. Mar. 27, 2020) ........................................................ 23

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*,
   602 F. Supp. 2d 277 (D. Mass. 2009) ..................................................................... 28

*New England Biolabs, Inc. v. Miller*,
   2022 WL 20583575 (D. Mass. Oct. 26, 2022) ....................................................... 23

*O'Donnell v. Robert Half Int'l, Inc.*,
    534 F. Supp. 2d 173 (D. Mass. 2008).............................................................. 15

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000) ......................................................................... 25

*Sasoon v. Postmates, Inc.*,
    2020 WL 8092224 (D. Mass. May 15, 2020).................................................... 13

*Savidge v. Pharm-Save, Inc.*,
    2024 WL 1366832 (W.D. Ky. Mar. 29, 2024) .................................................. 14

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003) ...................................................................... 15, 20

*Torrezani v. VIP Auto Detailing, Inc.*,
    318 F.R.D. 548 (D. Mass. 2017) ..................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................ 16

*Wright v. S. New Hampshire Univ.*,
    565 F. Supp. 3d 193 (D.N.H. 2021) ................................................................ 22

**Statutes**

28 U.S.C. § 1332(d)(4) ............................................................................................ 5

**Rules**

Fed. R. Civ. P. 23 ........................................................................... 2, 15, 19, 31

Fed. R. Civ. P. 23(a) ............................................................................................ 15

Fed. R. Civ. P. 23(a)(1) ........................................................................................ 15

Fed. R. Civ. P. 23(a)(3) ................................................................................... 17, 18

Fed. R. Civ. P. 23(a)(4) ................................................................................... 18, 19

Fed. R. Civ. P. 23(b) ....................................................................................... 15, 20

Fed. R. Civ. P. 23(b)(1) ........................................................................................ 15

Fed. R. Civ. P. 23(b)(2) ........................................................................................ 15

Fed. R. Civ. P. 23(b)(3)...................................................................................... 15, 20

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 30

Fed. R. Civ. P. 23(e) ................................................................................................ 14

Fed. R. Civ. P. 23(e)(2) ..................................................................................... 14, 22

Fed. R. Civ. P.  23(e)(3) .......................................................................................... 22

Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................... 32

Fed. R. Civ. P. 26 ...................................................................................................... 5

Fed. R. Evid. 408 ..................................................................................................... 24

Mass. R. Civ. P. 23 .................................................................................................. 13

## INTRODUCTION

Plaintiffs James Buechler, Julie Colby, John Kennedy, Sharon Pimental, and Cindy Tapper ("Federal Plaintiffs" or "Plaintiffs") respectfully request preliminary approval of a proposed Class Action Settlement Agreement ("Settlement Agreement" or "S.A."),[1] attached to the Joint Declaration of Lori G. Feldman and Kelly Iverson ("Joint Decl.") as Exhibit 1, resolving their claims against Defendant Shields Health Group, Inc. ("Shields" or "Defendant").

If approved, the Settlement Agreement will establish a non-reversionary cash fund in the amount of $15,350,000 (the "Settlement Fund"), which will pay for: (1) Administration and Notice Costs; (2) Approved Claims of all Settlement Class Members in both the Federal Action and State Action, (3) Service Awards to Settlement Class Representatives, as approved by the Court, and (4) Attorneys' Fees and Expenses, as approved and awarded by the Court. S.A. ¶ 3.3. In addition to the Settlement Fund, Defendants have implemented security enhancements and business practice changes (or will implement same) to prevent future data security incidents. *Id.* ¶¶ 5.1-5.3. This Settlement will resolve the claims of the Federal Plaintiffs, and a class of affected persons under

---

[1] This Settlement Agreement intends to resolve the claims of the above-mentioned Federal Plaintiffs that are, were, or could have been asserted in the litigation in the above-captioned actions entitled *In re Shields Health Group, Inc. Data Breach Litigation*, Case No. 1:22-cv-00561-PBS, pending in the United States District Court for the District of Massachusetts (the "Federal Action"). In addition, the Settlement Agreement also intends to resolve the substantially similar claims of Plaintiffs Constantine Kossifos, William Biscan, Tennie Komar, Lisa Smith, Amanda Johnson, Christine Cambria, Courtney Horgan, Kenneth Vandam, Peter Shea, and Maria Melo ("State Plaintiffs") pending in *Kossifos, et al., v. Shields Health Care Group, Inc.*, Case No. 2282-cv-0561, consolidated with *Johnson et al. v. Shields Health Care Group, Inc.*, Case No. 2277-cv-00839 and *Biscan et al. v. Shields Health Care Group, Inc.*, Case No. 2382-0023, which were consolidated in Norfolk Superior Court in the Commonwealth of Massachusetts in front of Judge Joseph F. Leighton (the "State Action" and, collectively, with the Federal Action the "Litigation"). The Federal Action is brought on behalf of class members who reside outside of the Commonwealth of Massachusetts. The State Action is brought on behalf of class members who reside within the Commonwealth of Massachusetts. The Settlement is a global resolution and is contingent upon final approval in both the State Action and Federal Action.

1

Fed. R. Civ. P. 23 (the "Federal Action Settlement Class" or "Class") against Defendant for issues relating to a data security incident that was discovered in or around March 28, 2022. An investigation determined that certain files, which may have included Federal Action Settlement Class members' Personal Information (defined as all Class Member-specific information identified by Shields as being potentially compromised, accessed, exfiltrated, or otherwise impacted as a result of the Data Incident, including any personal health information), was potentially viewed and/or taken from Shields' computer systems between March 7, 2022 and March 21, 2022 (the "Data Incident").

The Settlement Agreement provides substantial relief to the Settlement Class, addresses the typical harms sustained by individuals following a data breach, and its terms are well within the range of reasonableness and consistent with applicable law, particularly considering the extensive risks and uncertainties of further protracted litigation. After substantial investigation, informal discovery, the collection of relevant documents pursuant to the parties' discovery requests, the exchange of information prior to mediation, and settlement negotiations, including two mediations with Hon. Wayne Andersen (Ret.), the parties reached an agreement to settle all of the Plaintiffs' and the Federal Action Settlement Class Members' claims against Defendant, as well as to settle the State Action. The Settlement represents a reasonable compromise that considers the strengths and weaknesses of the parties' respective positions and the extensive risks and uncertainties of continued Litigation, including a trial and any appeals.

The Federal Plaintiffs respectfully request this Court enter an order substantially in the form as attached to the Settlement, which: (1) grants preliminary approval of the proposed

Settlement; (2) confirms that the "Federal Action Settlement Class"[2] shall be defined as all persons residing in the United States that Shields identified as potentially having their Personal Information impacted by the Data Incident and that are residents of any U.S. State, U.S. territory, or the District of Columbia, other than Massachusetts;[3] (3) confirms the Federal Plaintiffs as class representatives ("Representative Plaintiffs"); (4) confirms George Feldman McDonald, PLLC; Lynch Carpenter LLP; Keller Postman; Morgan & Morgan; and Mazow McCullough, PC as Class Counsel; (5) confirms the appointment of Analytics Consulting, LLC as the Settlement Administrator; (6) approves the parties' proposed Notice Plan; (7) and schedules further proceedings, including deadlines and a hearing at which time the Court will consider the parties' request for final settlement approval.

## BACKGROUND

### A.    **Background Facts.**

Shields is a healthcare company that provides MRI, PET/CT, and ambulatory surgical services to patients at more than forty locations throughout New England. Cons. Compl., Dkt. 64, ¶ 1. Prior to, and at the time, of the Data Incident alleged by Plaintiffs to have compromised the

---

[2] This Motion may refer to the "Federal Action Settlement Class" and the "Settlement Class." While the Settlement Class is defined to include both the State Action Settlement Class and the Federal Action Settlement Class in the Settlement Agreement, any reference to the Settlement Class is related to the global settlement terms and is not intended to suggest or request that this Court exercise jurisdiction over any members of the State Action Settlement Class. The Orders issued from this Court will only apply to the Federal Action Settlement Class.

[3] The Settlement Class specifically excludes: (a) any Judge or Magistrate Judge presiding over the Litigation, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (b) officers, directors, members, and shareholders of the Defendant; (c) persons who timely and validly request exclusion from and/or opt-out of the Federal Action Settlement Class and the successors and assigns of any such excluded persons; (d) any persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) the parties' counsel; and (f) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the criminal activity or occurrence of the Data Incident or who pleads nolo contendere to any such charge. S.A. ¶ 2.45.1.

Personal Information of Plaintiffs and the Class, Shields provided healthcare services in the New England region, including Massachusetts, Maine, Maryland, Rhode Island, and New Hampshire. *Id*. Shields also may have provided healthcare services during this time to patients in additional neighboring states who traveled to Shields facilities from their home state to receive healthcare services from Defendant and thereafter moved to other states. *Id*. Shields reported sending notice of the Data Incident to patients who reside in, among others, the following additional states (as publicly reported on the data breach reporting websites of the following state Attorneys General): Texas, Vermont, Washington, Indiana, California, Oregon, and Montana. *Id*.

On or around March 28, 2022, Shields discovered suspicious activity within its network, and determined that third-party cybercriminals had gained unauthorized access to Shields' network between March 7, 2022 and March 21, 2022.  S.A. ¶ 1.1. An investigation determined that certain files, which may have included Federal Action Settlement Class Members' Personal Information, may have been viewed and/or taken by unauthorized actors. S.A. ¶ 1.2.

On or around July 25, 2022, Shields began providing rolling notice of the Data Incident to impacted individuals. S.A. ¶ 1.4. Shields continued to send notice to impacted victims over the next several months. *Id.* By April 19, 2023, Shields determined that the total number of individuals impacted by the Data Incident was approximately 2,382,578, including 2,132,692 residents of Massachusetts and 249,886 out-of-state residents. S.A. ¶ 1.5.

**B.**    **Federal Procedural History**.

Beginning on June 9, 2022, proposed class action complaints were filed in the United States District Court for the District of Massachusetts, asserting claims arising out of the Data Incident. S.A. ¶ 1.6. Thereafter, the actions were consolidated. S.A. ¶ 1.7.

By Order dated September 16, 2022, the Court appointed Interim Class Counsel: with George Feldman McDonald, PLLC, Lynch Carpenter LLP, and Keller Postman serving as Interim Co-Lead Class Counsel,[4] Berman Tabacco and Block & Leviton serving as Interim Co-Liaison Counsel, and the following firms serving as the Interim Executive Committee: Barrack, Rodos & Bacine, Kantrowitz, Goldhamer & Graifman, P.C., Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, Milberg LLP, Morgan & Morgan, Lynch Carpenter LLP, Scott+Scott Attorneys at Law LLP[5], Sweeney Merrigan Law LLC, and Wolf, Haldenstein, Adler, Freeman & Herz LLP. Dkt. 55.

On January 9, 2023, the Federal Plaintiffs filed a Consolidated Class Action Complaint (the "Federal CAC"), which, among other changes, consolidated the facts and claims of the related actions filed in this federal district and redefined the scope of the "Federal Action" to be on behalf of a proposed nationwide class with the exception of individuals who are citizens of the Commonwealth of Massachusetts. S.A. ¶ 1.9.[6]

On August 23, 2023, Shields filed its motion to dismiss the Federal CAC. Dkt. 85.

The parties continued to work on their discovery plan pursuant to Fed. R. Civ. P. 26 and, on September 20, 2023, the parties filed their "Proposed Joint Statement" and "Proposed Case Management Schedule" for the Court's consideration. Dkt. 92.

---

[4] Lori G. Feldman of George Feldman McDonald, PLLC., Elizabeth Pollock-Avery of Lynch Carpenter, LLP and Seth Meyer of Keller Postman LLC were appointed as Interim Co-Lead Counsel. By Order dated October 16, 2023, Alex Dravillas of Keller Postman LLC was substituted for Mr. Meyer as Interim Co-Lead Counsel, and by Order dated May 9, 2024, Kelly K. Iverson of Lynch Carpenter, LLP was substituted for Ms. Pollock-Avery as Interim Co-Lead Counsel.

[5] Carey Alexander of Scott+Scott Attorneys at Law LLP was initially appointed as an Interim Executive Committee member. By Order dated September 16, 2024, Anjori Mitra of Scott+Scott Attorneys at Law LLP was substituted for Mr. Alexander.

[6] The State Action class is subject to the home state exception under CAFA. *See* 28 U.S.C. § 1332(d)(4).

On September 27, 2023, Interim Co-Lead Counsel and counsel for Shields appeared before the Court for a Case Management Conference. Judge Saris suggested that the parties coordinate the briefing schedule in the Federal Action with the schedule in the State Action and ordered the filing of an "Amended Case Management Schedule" consistent with that guidance. Dkt. 95.

On October 2, 2023, Federal Plaintiffs filed their opposition to Shields' motion to dismiss. Dkt. 98. On October 11, 2023, the parties filed an Amended Joint Statement and Case Management Schedule.  Dkt. 102. On October 26, 2023, Shields filed its reply in further support of its motion to dismiss. Dkt. 110.

By Order dated October 23, 2023, Judge Saris approved the parties' Amended Case Management Schedule, establishing deadlines for the completion of class certification discovery and the briefing of Federal Plaintiffs' class certification motion. Dkt. 111.

On November 27, 2023, the parties appeared before Judge Saris and presented oral argument relating to Shields' motion to dismiss.  S.A. ¶ 1.14.

On February 6, 2024, the parties filed a "Notice of Scheduled Mediation" advising the Court that they would engage in a mediation session on April 9, 2024. Dkt. 123.

On March 5, 2024, Judge Saris entered a Memorandum Opinion and Order allowing in part and denying in part Shields' motion to dismiss the Federal CAC. Dkt. 124.

On March 19, 2024, Shields filed its Answer to the Federal CAC. Dkt. 125. Defendant denied all material allegations in the Federal CAC and specifically denied all statutory, common law, and contract-related claims alleging it had inadequate data security or failed to properly protect any personal data.  *See id*.

On April 5, 2024, counsel for the parties attended an all-day mediation before Hon. Wayne Andersen (Ret.), in which they engaged in arm's-length negotiations. S.A. ¶ 1.30. Counsel for the

parties failed to reach an agreement in principle during that mediation session. S.A. ¶ 1.30. After the mediation concluded, the parties continued to litigate the Federal Action and to engage in discovery, with work being done up until they reached an agreement-in-principle to settle the Litigation. S.A. ¶ 1.29.

### C.    The Second Mediation

After additional case activity, discovery, and court decisions, the parties scheduled a second mediation with Hon. Wayne Andersen. S.A. ¶ 1.31. The second mediation took place in person in Naples, Florida on November 15, 2024. S.A. ¶ 1.32. Once again, counsel engaged in arm's-length negotiations. *Id*. Counsel for the parties failed to reach an agreement in principle during that mediation but kept the session open for continuing negotiations. *Id*.

After continued discussion through the mediator, Hon. Wayne Andersen made a mediator's proposal, which ultimately led to this settlement of the Litigation. S.A. ¶ 1.33.

The parties recognize the expense and risk inherent in continued litigation of the Federal and State Actions through further motion practice, discovery, trial, and any possible appeals. S.A. ¶ 1.34. The parties have considered the uncertainty of the outcome of further litigation, and the expense, difficulties, and delays inherent in such litigation. *Id*. The parties, though confident of their ability to overcome the challenges, are also aware of the burdens of proof necessary to establish liability and damages for the claims alleged in the Federal Action and the defenses thereto. *Id*. The parties have determined that the settlement reached is in their respective best interests and that the agreement is fair, reasonable, and adequate. *Id*. The parties have therefore agreed to the Settlement set forth in the terms and provisions of the agreement, subject to Court approval.

It is the intention of the parties to resolve the disputes and claims as set forth in the terms below.

## TERMS OF THE SETTLEMENT

The proposed Federal Action Settlement Class is defined as: all persons residing in the United States that Shields identified as potentially having their Personal Information impacted by the Data Incident and that are residents of any U.S. State, U.S. territory, or the District of Columbia, other than Massachusetts. S.A. ¶ 2.45.2. Individuals will be able to opt-out through the procedure described in the Settlement Agreement. S.A. ¶¶ 10.1-10.5.

The proposed Settlement Class (both the State and Federal Action Settlement Classes) consists of approximately 2,382,578 individuals whose Personal Information was potentially impacted in the Data Incident. S.A. ¶ 2.45. The Settlement Agreement provides for a common fund of fifteen million three hundred and fifty thousand United States Dollars ($15,350,000.00) (the "Settlement Fund"). S.A. ¶ 2.47. The Settlement Fund will be used to pay for: (1) Administration and Notice Costs; (2) Approved Claims of the Settlement Class; (3) Service Awards to Federal Action Settlement Class Representatives, as approved by the Court; and (4) Attorneys' Fees and Expenses, as approved by the Court. S.A. ¶ 3.3. The Settlement Fund will be deposited into an interest-bearing "Qualified Settlement Fund Account," established and maintained by the Settlement Administrator, for the benefit of the Settlement Class. S.A. ¶ 3.2. The Parties have selected Analytics Consulting, LLC as the Settlement Administrator. S.A. ¶ 2.43. Analytics has substantial experience in Notice and Claims Administration, as set forth in the Declaration of Richard Simmons attached as Exhibit D to Settlement Agreement.

As set forth below, the Settlement provides a straightforward claims process by which Settlement Class Members may obtain an award from the Settlement. In exchange for monetary

and non-monetary benefits provided under the Settlement Agreement, Settlement Class Members will release any and all claims against Defendant and the Released Parties arising from or in any way related to the Data Incident at issue in this litigation. S.A. ¶ 14.1.

      A.    **The Settlement Awards**.

All Settlement Class members who submit a valid and timely "Approved Claim" using the "Claim Form," attached as Exhibit C to the Settlement Agreement, are eligible to receive:

<u>Reimbursement for "Ordinary" Out-of-Pocket Losses and/or Ordinary Attested Time</u>.  All Settlement Class members are entitled to submit a claim for "Ordinary Out-of-Pocket Losses" or "Ordinary Attested Time" up to a total of two thousand five hundred United States Dollars ($2,500.00) per individual. S.A. ¶ 4.2.

"Ordinary Out-of-Pocket Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class member in responding to the Data Incident and/or notice of the Data Incident. S.A. ¶ 4.2.1. Ordinary Out-of-Pocket Losses may include, without limitation, the following: (1) costs associated with accessing or freezing/unfreezing credit reports with any credit-reporting agency; (2) other miscellaneous expenses incurred related to any Ordinary Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and (3) credit monitoring or other mitigative costs. *Id.* Settlement Class members who elect to submit a claim for reimbursement of Ordinary Out-of-Pocket Losses are required to provide to the Settlement Administrator the information and documentation required to evaluate the claim as set forth in the Claim Form. S.A. ¶ 4.2.3.

"Ordinary Attested Time" means up to five (5) hours of time at a rate of thirty United States Dollars ($30.00) per hour attested to be spent in responding to the Data Incident and/or notice of the Data Incident. S.A. ¶ 4.2.2.

Reimbursement for "Extraordinary Losses" and/or Extraordinary Attested Time. In addition to Ordinary Out-of-Pocket Losses, Settlement Class members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for "Extraordinary Losses" and/or Extraordinary Attested Time up to twenty-five thousand United States Dollars ($25,000.00) per individual, in the aggregate. S.A. ¶ 4.3. Payment of any claim for extraordinary losses is subject to pro rata increase/reduction as set forth in the Settlement Agreement. S.A. ¶ 4.7.

"Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class member that are more likely than not connected to the Data Incident, and are costs, losses, or expenditures that are not reimbursable as Ordinary Out-of-Pocket Losses. S.A. ¶ 4.3.1. Extraordinary Losses may include, without limitation, any unreimbursed costs, losses, or expenditures incurred as a result of identity theft, fraud, falsified tax returns, real estate title fraud, financial fraud, government benefits fraud, or other misuse of the Settlement Class Member's Personal Information. *Id.*

"Extraordinary Attested Time" means up to twenty (20) hours of time spent remedying identity theft, fraud, or other misuse of their Personal Information more likely than not connected to the Data Incident at a rate of thirty United States Dollars ($30.00) per hour by providing an attestation and a brief description of: (1) the nature and date(s) of identity theft, fraud, or misuse of Personal Information; (2) the actions taken to remedy identity theft, fraud, or other misuse of their Personal Information; and (3) the total time associated with each action. The Settlement Administrator may request third-party documentation, not self-prepared, if deemed necessary to validate an allegation of identity theft, fraud or misuse that is the basis of a claim for Extraordinary Attested Time. S.A. ¶ 4.3.2. The combined total of claimed Ordinary Attested Time and

Extraordinary Attested Time cannot exceed twenty (20) hours. *Id.* Such time may not also be accounted for through reimbursement of Extraordinary Losses. *Id.*

Settlement Class members who submit a claim for reimbursement of Extraordinary Losses must provide to the Settlement Administrator all information required to evaluate the claim as set forth in the Claim Form. S.A. ¶ 4.3.3. Extraordinary Losses will be deemed "more likely than not connected" to the Data Incident if: (1) the unreimbursed cost(s), loss(es), or expenditure(s) were incurred in responding to the Data Incident and/or notice of the Data Incident; and (2) the personal information used to commit identity theft, fraud, or other misuse consisted of the same type of Personal Information that was provided to Defendant prior to the Data Incident or that can be reasonably obtained on the basis of Personal Information that was provided to Defendant prior to the Data Incident. S.A. ¶ 4.3.4.

Alternative Cash Payment.  As an alternative to making a claim for any combination of Ordinary Out-of-Pocket Losses, Ordinary Attested Time, Extraordinary Out-of-Pocket Losses, and/or Extraordinary Attested Time, Settlement Class Members may elect to receive a flat cash payment of fifty United States Dollars ($50.00). S.A. ¶ 4.5.

*Pro Rata* Increase / Reduction. If the amount of Approved Claims exceeds the Settlement Funds available to pay claims, then the Approved Claims will be reduced on a *pro rata* basis such that the total amount of all claims does not exceed the amount of the Settlement Fund after accounting for Administration and Notice Costs, Service Awards, and Attorneys' Fees and Expenses as approved by the Court. S.A. ¶ 4.7. If Settlement Funds remain available after accounting for all Approved Claims, Administration and Notice Costs, Service Awards, and Attorneys' Fees and Expenses as approved by the Court, then the Approved Claim payments will be increased on a *pro rata* basis. If the claims are increased due to the availability of funds, the

11

total amount of the *pro rata* increase to the claim award will not exceed $400 on top of the claimed amount. *Id.*

Remainder Funds.  Approved Claims will be paid via electronic payment or check mailed to the Settlement Class member. Settlement Class members will have ninety (90) days to cash the checks or electronically receive the payments, after which any uncashed checks will be void and the ability to receive electronic payments will expire. All funds remaining in the Qualified Settlement Fund Account after the disbursements to Settlement Class Members, for Notice and Administration, and for Attorneys' Fees, Costs, and Services Awards, and following the preparation of any required tax documents, will become the Remainder Fund for *cy pres* distribution, subject to approval by the Courts. S.A. ¶ 4.8.

Data Security Enhancements.  Since the Incident, Defendant has invested significantly in remediation, cybersecurity enhancements, and expansion of its IT workforce ("Data Security Enhancements"), and has committed to maintaining those investments and measures for the foreseeable future, details of which were confidentially shared with Plaintiffs' Counsel during settlement negotiations. S.A. ¶ 5.1. Actual costs for the implementation and maintenance of the Data Security Enhancements will be paid by Defendant apart from the Settlement Fund described in Section 3 of this Agreement. S.A. ¶ 5.2. Defendant will provide a confidential declaration detailing all Data Security Enhancements implemented as a result of the Data Incident, which shall be filed under seal only upon the Courts' request. S.A. ¶ 5.3.

### B.    Service Awards and Attorneys' Fees, Costs, and Expenses

In the Settlement Agreement, Defendant agrees not to oppose a request by Plaintiffs' Counsel for payment of Service Awards to the Representative Plaintiffs up to $2,500 per Settlement Class Representative. S.A. ¶ 12.4. The request will be made with Settlement Class

Counsels' application for Attorneys' Fees, Costs, and Service Awards, which will be filed thirty (30) days prior to the Objection Deadline. The $2,500 incentive award requested here is consistent with awards authorized in numerous reported case decisions.[7]

In negotiating the terms of the Settlement, the parties did not discuss the payment of Attorneys' Fees and Expenses, other than that the Settlement Fund would be used to pay Attorneys' Fees and Expenses. S.A. ¶ 12.1. As set forth in the Settlement Agreement, Settlement Class Counsel may seek approval by the Court for an award of Attorneys' Fees in an amount not to exceed 33 and 1/3% of the Settlement Fund, plus any Expenses. S.A. ¶ 12.2. The request will be made with Settlement Class Counsels' application for Attorneys' Fees, Costs, and Service Awards, which will be filed thirty (30) days prior to the Objection Deadline.

### C. Objecting to or Opting-Out of the Settlement

The Federal Action Settlement Class Members may Opt-Out[8] of the Settlement or may submit an Objection to the Settlement on or before sixty (60) days after the Notice Date. S.A. ¶¶ 10, 11. The process to do submit an Opt-Out request or Objection to the Settlement Administrator is simple and either may be submitted electronically or through mail, as set forth in Paragraphs 10 (Opt-Out) and 11 (Objections) of the Settlement Agreement. *Id.*

---

[7] "Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015); *Sasoon v. Postmates, Inc.*, No. CV 17-11397-JCB, 2020 WL 8092224, at *4 (D. Mass. May 15, 2020) (granting incentive award of $2,500 for each named plaintiff).
[8] The State Action Settlement Class does not have the ability to Opt-Out of a class under Mass. R. Civ. P. 23. The Opt-Out provision applies only to the Federal Action Settlement Class.

### D.    <u>Confidential Termination Provision</u>

The Settlement Agreement includes a confidential side provision allowing Defendant to terminate the Agreement if a specified number of Settlement Class Members opt out. S.A. ¶ 13.4. This provision can be provided to the Court *in camera* upon request.

## ARGUMENT

The Settlement Agreement is fair, reasonable, and adequate, particularly considering the substantial risks and uncertainties of further, protracted litigation of this matter. Accordingly, Plaintiffs request that the Court grant their Motion for Preliminary Approval, order distribution of Notices to the Federal Action Settlement Class, and set a date and time for a Final Fairness Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2).

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). For the Court to grant approval, the Court must first "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the Parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.*

## I.    The Proposed Federal Action Settlement Class Meets the Requirements for Class Certification

In preliminarily approving a class action settlement, the Court must "determine whether to certify the class for settlement purposes." *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (internal citation omitted). Courts routinely find that data breach classes meet the class certification requirements. *See, e.g.*, *Attias v. CareFirst, Inc.*, 346 F.R.D. 1 (D.D.C. 2024); *Savidge v. Pharm-Save, Inc.*, No. 3:17-cv-186-CHB, 2024 WL 1366832 (W.D.

Ky. Mar. 29, 2024); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015). Indeed, data breach actions conform to the "policy at the very core of the class action mechanism . . . to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

In considering whether to certify a settlement class, courts look to Rule 23 of the Federal Rules of Civil Procedure. *See Amchem*, 521 U.S. at 620–21. "To obtain class certification, the plaintiff must establish the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3)." *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 102 (D. Mass. 2010) (quoting *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003)). Rule 23(b)(3)'s requirements are met "if a) 'the questions of law or fact common to class members predominate over any questions affecting only individual members' and b) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *O'Donnell v. Robert Half Int'l, Inc.*, 534 F. Supp. 2d 173, 183 (D. Mass. 2008) (quoting Fed. R. Civ. P. 23(b)(3)). These requirements are generally referred to as "predominance" and "superiority." Here, the Rule 23(a) and (b) requirements are satisfied, and the Court should certify the Federal Action Settlement Class.

## A.  The Requirements of Rule 23(a) are Satisfied

### 1.    The Class Is Sufficiently Numerous.

"In order to satisfy Rule 23(a)(1)'s numerosity requirement, Plaintiff must demonstrate that 'the class [would be] so numerous that joinder of all members is impracticable." *Hochstadt*, 708 F. Supp. 2d at 102 (quoting Fed. R. Civ. P.  23(a)(1)). Courts commonly treat a proposed class of

at least forty members as meeting the numerosity requirement of this rule. *See, e.g.*, *Torrezani v. VIP Auto Detailing, Inc.*, 318 F.R.D. 548, 553 (D. Mass. 2017). Here, the proposed Federal Action Settlement Class includes approximately 249,886 individuals, far surpassing the threshold number of forty individuals. S.A. ¶ 2.45. As such, a joinder would be impracticable, and numerosity is established.  Moreover, the Settlement Class Members have already been identified by Defendant and/or their data custodians in their investigation of the Data Incident and their issuance of notice to affected individuals. *See Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127–28 (S.D.N.Y. 2011) (finding defendants' business records may be used to ascertain class members).

### 2.     Commonality Is Satisfied.

Commonality is a "low hurdle requiring a single common legal or factual basis." *Crowe v. ExamWorks, Inc.*, 136 F.Supp.3d 16, 47 (D. Mass. 2015) (citations omitted). Commonality exists where "class members have suffered the same injury" and their claims "depend on a common contention . . . that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement is not demanding. Rather, it is a "low bar" and may be satisfied by a single common question of fact or law. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008).

Here, the Federal Action Settlement Class shares numerous common questions of law and fact, and the answers to those questions will resolve central issues in one classwide stroke. Plaintiffs' and Federal Action Settlement Class Members' Personal Information was obtained and stored by Defendant in the regular course of its business. Plaintiffs allege that because of the same Data Incident and the same alleged failures by Defendant, each Federal Action Settlement Class

16

Member's Personal Information was accessed and obtained by cybercriminals. Plaintiffs and Federal Action Settlement Class Members all allege similar injuries, including actual and attempted misuse of their stolen information, the imminent and substantial risk of harm from future misuse of their data, the loss of privacy from cybercriminals obtaining their Personal Information, out-of-pocket expenses and other losses, and lost time spent responding to the Data Incident and mitigating the risk of future misuse of their Personal Information.

Beyond these common questions of fact, Plaintiffs' and Federal Action Settlement Class Members' claims also present numerous common questions of law, including:

- Whether Defendant unlawfully used, maintained, lost or disclosed Plaintiffs' and Class Members' Private Information;

- Whether Defendant owed Plaintiffs and the Federal Action Settlement Class a duty to reasonably secure their Personal Information;

- Whether Defendant breached its duties by failing to implement and maintain adequate data security;

- Whether Defendant's breach of its duties caused harm to Plaintiffs and the Federal Action Settlement Class, including the theft of their Personal Information;

- Whether Plaintiffs and the Federal Action Settlement Class suffered harm due to the theft and potential misuse of their Personal Information; and

- Whether Plaintiffs' and Federal Action Settlement Class Members' damages are reasonably quantifiable.

The existence of these common legal questions and overwhelmingly similar factual issues presented by Plaintiffs' and Federal Action Settlement Class Members' claims suffices to meet commonality here.

### 3.    Typicality Is Satisfied.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical if

they "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (citations omitted). "The claims of the class representative and the class overall must share essential characteristics, but they need not be precisely identical." *Bezdek*, 79 F. Supp. 3d at 338. Here, Plaintiffs' claims are typical of those of the Federal Action Settlement Class Members because they were all injured by the same Data Incident that resulted in certain files, which may have included Federal Action Settlement Class Members' Personal Information, being accessed, duplicated and taken from Shields' systems. There is no material variation between Plaintiffs' claims and the claims of the Class members. Plaintiffs and Federal Action Settlement Class Members all allege that the Data Incident occurred because of the same alleged failures by Defendant. Plaintiffs and the Class all allege their Personal Information was accessed by an unauthorized third party, and their claims involve the same overarching legal theories. *See Barletti v. Connexin Software, Inc.*, No. 2:22-cv-04676, 2024 WL 1096531, at *3 (E.D. Pa. Mar. 13, 2024) (typicality satisfied where "each named plaintiff suffered unauthorized disclosure of their sensitive information, an identical harm to all class member"); *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844, at *3 (E.D. Va. Nov. 19, 2021) (typicality satisfied where plaintiffs and settlement class members were subject to a data breach and were alleged to have suffered the same type of injuries). Plaintiffs' legal theories do not conflict with those of absentee Federal Action Settlement Class Members, and Plaintiffs will represent the interests of all Federal Action Settlement Class Members fairly, because such interests parallel their own. As such, Rule 23(a)(3)'s typicality requirement is satisfied.

### 4.    Plaintiffs And Counsel Satisfy the Adequacy Requirement.

Rule 23(a)(4) requires that the proposed Federal Action Settlement Class Representatives

"fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement has two parts. The plaintiffs 'must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 55 (D. Mass. 2010) (citation omitted). Here, Plaintiffs satisfy both requirements.

First, Plaintiffs' interests align with, and are not adverse or antagonistic to, those of Federal Action Settlement Class Members. Joint Decl. ¶¶ 52, 54. Plaintiffs seek to hold Defendants accountable for, among other things, their alleged failures to secure and safeguard Plaintiffs' and Federal Action Settlement Class Members' Personal Information—the same alleged wrongdoing that caused the Federal Action Settlement Class to allegedly suffer similar harm. Plaintiffs' interests therefore fully align with those of the Class.

Second, Interim Class Counsel are qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation—including data breach cases analogous to this one. Joint Decl. ¶¶ 47, 55. Settlement Class Counsel and Plaintiffs have diligently advanced the interests of the Federal Action Settlement Class, including by investigating the Data Incident and resolving the case through settlement. Indeed, the Court has already appointed most of Settlement Class Counsel[9] as Interim Class Counsel and found that they meet the requirements of Rule 23. Dkt. 63. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

---

[9] Morgan & Morgan are Co-Lead Counsel, with Interim Class Counsel appointed here, in the State Action.

### B.  The Requirements of Rule 23(b) are Satisfied

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594, 623. "The superiority inquiry [ ] ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777, at *21 (D. Mass. Oct. 16, 2017) (citation omitted). Courts considering settlement-only class certification need not consider "whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Here, Plaintiffs readily meet both the predominance and superiority requirements.

### 1.     Common Issues Predominate

"Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow*, 323 F.3d at 39. "Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria -- thus rendering unnecessary an evidentiary hearing on each claim." *Id.* at 40.

In this case, the predominance requirement is satisfied because Plaintiffs are challenging one uniform incident—the Data Incident as described above—and common answers would determine the outcome of the litigation at a trial. In cases like this one, only the damages amount varies from class member to class member, and this is insufficient to preclude a predominance finding. *See McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 312 (D. Mass. 2004) ("The

amount of damages for each individual class member will ultimately require some individual proof, but administration of these individual claims will be straightforward and these individual questions do not predominate over the common questions identified above.").

### 2. A Class Action Is Superior.

"Considerations of efficiency and judicial economy drive the assessment of superiority of a class action." *Crowe*, 136 F. Supp. 3d at 48 (citation omitted). Resolution of Plaintiffs' and the Class's claims in a single action, as opposed to 249,886 individual actions requiring consideration of the same factual and legal issues, is a superior method of adjudicating the Class's claims. Superiority is satisfied here, where all of the Plaintiffs and Defendant have agreed to consolidate all related lawsuits in an effort to resolve all issues related to the Data Incident. This effort will promote uniformity of decisions regarding multiple actions brought in Massachusetts about this event.

### II. The Proposed Settlement Agreement is Fair, Reasonable, and Adequate

"Prior to granting preliminary approval of the settlement, the Court must be satisfied that: (A) the proposed class should be certified for the purpose of settlement; (B) the settlement is fair, reasonable, and adequate; and (C) the proposed notice and notice plan satisfy due process requirements." *Meaden v. HarborOne Bank*, No. 23-CV-10467-AK, 2023 WL 3529762, at *2 (D. Mass. May 18, 2023) (citation omitted). In a preliminary evaluation of a proposed settlement, the court makes an initial determination regarding the fairness, reasonableness, and adequacy of the settlement terms. *Id.* at *3. Case law "offers laundry lists of factors pertaining to reasonableness, but the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps

unattainable variations on the proffered settlement." *Bezdek v. Vibram USA Inc.*, 809 F.3d 78, 82 (1st Cir. 2015) (citation omitted).

The factors the Court must consider are:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

"At this preliminary stage, there is a presumption that the settlement is fair, reasonable, and adequate if certain procedural guidelines were followed." *Meaden*, 2023 WL 3529762, at *3. The presumption applies if "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id*. (citation omitted) (quoting *In re Lupron Mktg. & Sales Pracs. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004)). *see also Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 206 (D.N.H. 2021) (presumption applied where the "record establishes that counsel for the parties negotiated the Agreement at arm's length, at times with the assistance of an experienced and neutral mediator, following a thorough investigation and mutual exchange of evidence."); *Giotto v. US Dep't of Homeland Sec., Sec'y*, No. 20-CV-453-LM, 2025 WL 49016,

at *3 (D.N.H. Jan. 8, 2025) (finding presumption of reasonableness applied "because the record establishes that counsel for the parties negotiated the proposed settlement at arm's length over the course of a long period of time following sustained litigation, adversarial testing of plaintiffs' claims, and the exchange of information and discovery.").

    **A.**    **The Presumption of Reasonableness Applies**.

        **1.**    **The Settlement Agreement Was Negotiated at Arm's Length**

"A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel." *Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*, No. 15-30024, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 33 (1st Cir. 2009)). "The assistance of a neutral mediator, … reinforces that the Settlement Agreement is non-collusive." *New England Biolabs, Inc. v. Miller*, No. 1:20-CV-11234-RGS, 2022 WL 20583575, at *2 (D. Mass. Oct. 26, 2022); *see also Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *4 (S.D. Fla. May 24, 2019) (affirming decision granting final approval of the class settlement in part because the "Settlement Agreement was the result of those discussions and arm's-length negotiations" as the parties conducted a mediation before Hon. Wayne Andersen).

Here, the parties engaged in arm's-length and good-faith negotiations and reached a mutually agreeable settlement after two mediations with Hon. Wayne Andersen, with each party making several settlement proposals. S.A. ¶¶ 1.30–1.33. The presumption of reasonableness thus applies. The Settlement Agreement was reached following protracted arm's-length negotiations between highly experienced class action litigators with substantial experience litigating data breach and privacy cases, and after the exchange of informal discovery and formal mediation with an experienced mediator and former U.S. District Judge. *Id.* After participating in two mediations

with Judge Andersen, the parties continued to negotiate and finalize the terms of the Settlement before entering into the Settlement Agreement. *Id.* Having fully considered the merits and potential value of Plaintiffs' and the Class Members' claims, as well as Shields' defenses, Settlement Class Counsel determined that the proposed settlement provides a reasonable and fair resolution. *Id.*

### 2.    The Parties Exchanged Sufficient Discovery

In assessing the sufficiency and meaningfulness of discovery, the issue is not whether discovery was completed, but whether "sufficient discovery [was] conducted to make an intelligent judgment about settlement." *Hochstadt*, 708 F. Supp. 2d at 107. Here, the parties reached the proposed Settlement after exchanging both informal and formal discovery. Joint Decl. ¶¶ 34-36. The informal discovery received and reviewed by Settlement Class Counsel under Fed. R. Evid. 408, along with their knowledge and experience in this area of the law, provided them with the information needed to objectively evaluate the strengths and weaknesses of Plaintiffs' and Federal Action Settlement Class Members' claims. *Id.* ¶ 29-30, 35. In addition, the parties were actively engaging in formal discovery while settlement negotiations proceeded. *Id.* ¶ 36.  Though the parties had not completed all discovery, Settlement Class Counsel has litigated numerous data breach class actions and was fully informed regarding the type of discovery necessary to conduct informed and empowered settlement negotiations. *Id.* ¶ 37. Based on the information provided and the benefits achieved for the Class, Settlement Class Counsel believe the Settlement is an excellent result. *Id.* ¶ 38. Thus, Settlement Class Counsel believe the Settlement is fair, reasonable, and adequate. *Id.* ¶ 39. Because the parties exchanged sufficient information to adequately inform them "about their respective litigation positions," this factor weighs in favor of preliminary approval. *M3 Power*, 270 F.R.D. at 63.

### 3. The Proponents of the Settlement Are Highly Experienced in Data Breach Class Litigation

The third factor courts evaluate in determining whether the presumption of reasonableness applies is the opinion of experienced counsel. Courts give significant weight to the judgment of experienced counsel who have engaged in arm's-length settlement negotiations. *See, e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *see also Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate.").

Here, Settlement Class Counsel are experienced in prosecuting complex class actions nationwide, including data breach cases. Joint Decl. ¶ 47. Settlement Class Counsel have demonstrated throughout this litigation that they are well-versed in data breach and privacy law, and they have prosecuted this case vigorously and with a commitment to obtaining a reasonable recovery for the Class. *Id*. Settlement Class Counsel identified and investigated Settlement Class Members' claims, successfully opposed a motion to dismiss, conducted discovery related to Settlement Class Members' claims and Defendant's defenses, and conducted extensive negotiations (participating in two mediations and extended settlement discussions) to secure meaningful relief for class members in the form of the proposed Settlement Agreement. Joint Decl. ¶ 48. Given their extensive experience in consumer class litigation, particularly in data breach litigation, Settlement Class Counsel strongly believe the proposed Settlement is fair, reasonable, and adequate. Joint Decl. ¶ 49. Thus, this factor supports preliminary approval.

### 4. Federal Action Settlement Class Objections

The fourth factor considers the number of Class Members who have objected to the Settlement, which is more relevant at final approval after notice has been given and Class Members have been given an opportunity to object to the proposed Settlement. Thus, although the Settlement is within the range of possible final approval, the Court considers the number of objections when determining whether to finally approve the Settlement.

### B. Other Factors Support Finding That the Settlement is Fair, Reasonable, and Adequate

The additional factors courts consider in determining whether a settlement is fair, reasonable, and adequate further weigh in favor of granting preliminary approval.

### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class

The Federal Action Class Representatives have adequately represented the Class. But for Plaintiffs' initiative in bringing this lawsuit, the Settlement Agreement benefiting the Class would not have been reached. The Class Representatives have actively participated in this litigation, including communicating with counsel on the status of the litigation, consulting with counsel on the management and direction of the litigation, assisting in approving pleadings, and gathering and producing relevant information and documents for informal discovery and for responding to Defendant's discovery requests. Joint Decl. ¶ 52.

Here, as discussed above, proposed Settlement Class Counsel are experienced in prosecuting complex class actions nationwide, including data breach cases. Joint Decl. ¶ 47. Throughout this litigation, Settlement Class Counsel have demonstrated that they are well-versed in data breach and privacy law, and they have prosecuted this case vigorously and with a commitment to obtaining a reasonable recovery for the Class. *Id.* Settlement Class Counsel

identified and investigated Class Members' claims, successfully opposed a motion to dismiss, conducted discovery related to Class Members' claims and Defendant's defenses, and conducted extensive negotiations (participating in two mediations and extended settlement discussions) to secure meaningful relief for class members in the form of the proposed Settlement Agreement. Moreover, the Settlement yields recoveries for Plaintiffs and the Settlement Class that are in line or surpass recoveries in similar settlements arising out of similar health care data breaches. *See, e.g.*, *Terrance Rosa et al. v. Brightline, Inc.*, No. 24-md-03090, ECF No. 171 (S.D. Fla.) (resulting in a settlement of $7 million, for a class of over a million individuals); *Bickham vs. ReproSource Fertility Diagnostics, Inc.*, No. 21-cv-11879, ECF No. 64-1 (D. Mass) (resulting in a settlement of $1.25 million, for a class of 228,214 individuals); *In re Harvard Pilgrim Data Sec. Incident Litig.*, Case No. 1:23-cv-11211-NMG (D. Mass.) (approving $16 million settlement for a class of 2,967,396 individuals). Thus, this factor further supports preliminary approval.

### 2. The Settlement Affords Adequate Relief for the Class in Light of the Facts, Risks, and Costs of Litigation.

The Settlement Agreement substantially benefits the Class while avoiding the significant expenses and delays attendant to discovery, motion practice related to summary judgment, class certification, trial, and appeals. The resolution of this action affords the Class concrete relief now rather than the potential for relief in the future. While Plaintiffs' Counsel is confident that Plaintiffs would succeed, further litigation entails risks and delays in relief to Plaintiffs and the Class. The Settlement Agreement provides an effective and efficient method to provide notice to and distribute relief to the Class. Furthermore, the terms of an award of Attorneys' Fees are fair and reasonable compared to the relief for the Class and are consistent with common practice.

As the Court previously stated in a case approving a proposed settlement, an advantage of a settlement in this kind of complicated case is that it "heads off what would likely be complex,

expensive, and lengthy, albeit probably successful litigation." *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 282 (D. Mass. 2009). Here, absent an approved settlement, the parties will be forced to continue litigation. The fact-intensive trials will result in significant expense to all parties. Any judgments will likely be appealed, extending the costs and duration of the litigation. The Settlement Agreement, on the other hand, will result in prompt and equitable payments to the Settlement Class.

In addition, while Plaintiffs are confident in their likelihood of success, Defendant maintains several defenses that could reduce or eliminate the potential recovery for Plaintiffs and the Class. In the Court's Order on the motion to dismiss, five of Plaintiffs' claims were dismissed. *See Biscan v. Shields Health Care Group, Inc.*, No. 1:22-cv-10901, ECF No. 124. While Plaintiffs' other claims survived the motion to dismiss, Defendant maintains defenses on those claims that could theoretically succeed at summary judgment or at trial. The standards of review are obviously different at the motion to dismiss stage and the trial stage (plausibility versus preponderance of the evidence). If this case went to trial, while Plaintiffs are confident in the viability of their claims, there is a risk that the trial could result in no recovery for Plaintiffs and the Settlement Class.

In reaching their agreement, the parties considered the uncertainty and risks in litigation and the costs each party will incur if litigation continues. Similarly, Defendant supports this resolution since it eliminates the risks, uncertainties, and costs of further litigation. The parties have concluded that it is in their mutual interest to resolve the litigation of the claims in the manner outlined in the Settlement Agreement.

Furthermore, the Settlement Fund will be distributed based on harm to the particular individual. As described above, settlement funds will be available to those who attest losses or

harm, those who experienced ordinary losses, and those who experienced extraordinary losses. To participate in the settlement, the Class members simply have to return a Claim Form. S.A. 4.1.

Finally, the notice that will be provided per the Notice Plan informs all Class members about the expenses involved with the settlement, including the amounts that will be requested for an award of Attorneys' Fees, Expenses, and Service Awards.

The amount to be requested as Attorneys' Fees and Expenses is consistent with the percentage of common fund permitted for determining Attorneys' Fees in class action settlements.[10]

As such, the proposed Settlement Agreement is fair, reasonable, and adequate.

### 3. The Settlement Treats Class Members Equitably Relative to Each Other.

The Settlement Agreement is also fair, reasonable, and adequate because it treats class members equitably relative to one another. Here, the proposed settlement benefits provide all Settlement Class Members with the same equal opportunity to file claims for reimbursement of ordinary out-of-pocket expenses, lost time, reimbursement of extraordinary losses, or an alternative cash payment. S.A. ¶ 4. The settlement benefits plan was designed to provide equal treatment to those who did not incur out of pocket losses while allowing for individualized compensation to Settlement Class Members who incurred such expenses as a result of the Data Incident. *Id.* ¶¶ 4.2-4.3. Indeed, the proposed Settlement benefits are similar to other court-approved allocation plans in other data breach cases. *See, e.g., Barletti*, 2024 WL 1096531, at *6 (granting preliminary approval of data breach settlement that provided class members the ability

---

[10] *See, e.g., J&L Cable TV Servs.*, 538 F. Supp. 3d at 213 (granting preliminary approval of a class settlement where the plaintiffs' counsel intended to seek up to one-third of the gross settlement fund).

to file a claim for credit monitoring services, out-of-pocket losses, or an alternative cash payment); *In re Capital One Consumer Data Security Breach Litig.*, No. 1:19-md-2915, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving proposed allocation plan that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services because it treated class members equitably). Thus, the proposed Settlement plan is fair, reasonable, and adequate.

### C.    The Proposed Notice Is Adequate and Appropriate.

Upon preliminary approval and certification of a settlement class, Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified with reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "To satisfy due process, the notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Hill v State Street Corp.*, No. CV-09-12146, 2015 WL 127728, at *14 (D. Mass. Jan. 8, 2015) (internal quotations omitted). When possible, notice should be afforded to class members directly. *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Maine 2003) ("individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances").

Additionally, the notice must fully inform settlement class members about the action, the settlement and its benefits, each settlement class member's options to file a claim, opt out of the settlement, or object to it, and the means and deadline to do so. *See Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-cv-11390, 2015 WL 8664204, at *3 (D. Mass. Dec. 11, 2015) (citing Fed. R. Civ. P. 23(c)(2)(B)); *Compact Disc*, 216 F.R.D. at 218–19 (approving a class notice that

"described among other things, the class, the litigation, the proposed settlement, how an affected consumer could opt-out or object, and the funds for costs, attorney fees and incentive awards" and "directed individuals seeking additional information to a website address and provided counsel's address for mailing or delivering written comments").

Here, the Notice Plan satisfies the requirements of Rule 23 and due process. The Notice Plan calls for direct notice to Federal Action Settlement Class Members. S.A., Ex. D. Defendant already identified Federal Action Settlement Class Members when Defendant investigated the Data Incident and issued notice to affected individuals. Under the Notice Plan, Defendant will provide the Settlement Administrator with all known and readily available mailing information for Federal Action Settlement Class Members, including their U.S. mail addresses and, where available, email addresses. *Id.* This type of direct notice plan is the best practicable notice under Rule 23.

The notices contain sufficient information to apprise recipients of the Settlement, and of their right to submit a claim, opt out of the Settlement and Federal Action Settlement Class, or object to the Settlement. The Notice Plan provides the Class members with all of the relevant information, including: the terms of the Settlement; who is a member of the Class; the date, time, and place of the hearing for final approval; the proposed allocation of the Settlement Fund; the procedures and deadlines for objecting to the Settlement; the terms relating to Attorneys' Fees and costs; the terms relating to fees and expenses of the Settlement Administrator; the proposed service awards and how the Class members can obtain additional information about the Settlement. *See* S.A., Exs. A, B, C, D. Specifically, the Long Form Notice describes the Settlement Class (as well as the Federal Action and State Action Settlement Classes), the nature of the case, terms of the Settlement, notifies Federal Action Settlement Class Members of their rights to submit a claim,

opt out of the Settlement, or object to it, and provides Federal Action Settlement Class Members with opportunities to obtain more information, including through the Settlement Website. *See* S.A., Exs. A and B (the long form notice and short form post-card notice).

As such, the Notice Plan provides all required information and, therefore, gives adequate notice to the Class.

## III.    The Court Should Preliminarily Appoint Plaintiffs as Federal Action Settlement Class Representatives

The Court should preliminarily appoint Plaintiffs as Federal Action Settlement Class Representatives. Plaintiffs all diligently advocated on behalf of the Class and prosecuted this action alongside proposed Class Counsel. They were at all times available to proposed Class Counsel for consultation. The combined efforts of Plaintiffs and proposed Class Counsel ultimately led to the proposed Settlement and the benefits it makes available to the Class. Joint Decl. ¶ 56.

## IV.    The Court Should Preliminarily Appoint Class Counsel

In appointing Class Counsel, courts must consider: (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Proposed Class Counsel have worked cooperatively and efficiently and committed substantial time and resources to this case. This work has included: (i) investigating the Data Incident; (ii) researching and evaluating the appropriate legal claims to assert; (iii) interviewing potential class representatives about their experiences; (iv) preparing and filing class action complaints; (v) opposing the motion to dismiss; (vi) preparing and filing a consolidated class action complaint; (vii) engaging in informal discovery with Defendant in advance of the mediation; (viii) participating in two mediation sessions and subsequent settlement discussions; and (ix) negotiating the proposed settlement, preparing the

settlement documentation, and moving for preliminary approval. *See* Joint Decl. ¶ 41. Because Settlement Class Counsel have demonstrated their commitment to litigating these claims, the Court should appoint George Feldman McDonald, PLLC; Lynch Carpenter LLP; Keller Postman; Morgan & Morgan; and Mazow McCullough, PC as Class Counsel for the Settlement.

## CONCLUSION

Plaintiffs respectfully request that the Court certify the Federal Action Settlement Class for settlement purposes only; grant preliminary approval of the Settlement Agreement; appoint Settlement Class Counsel as Class Counsel; appoint Plaintiffs as Federal Action Settlement Class Representatives; approve the Notice Plan substantially similar to the one attached to the Settlement Agreement as Exhibit D; approve the Claim Form; confirm the appointment of Analytics Consulting, LLC as the Settlement Administrator; and enter the contemporaneously filed Proposed Order.

Dated: May 15, 2025

Respectfully submitted,

*/s/ Brendan Jarboe*
Jason Leviton (BBO #678331)
Brendan Jarboe (BBO #691414)
**Block & Leviton, LLP**
260 Franklin St., Ste. 1860
Boston, MA 02110
Telephone: (617) 398-5600
jason@blockleviton.com
brendan@blockleviton.com

Lori G. Feldman (*pro hac vice*)
**George Feldman McDonald, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Telephone: (917) 983-9321
lfeldman@4-justice.com

Kelly K. Iverson (*pro hac vice*)
**Lynch Carpenter, LLP**

1133 Penn Avenue-5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
kelly@lcllp.com

Alex J. Dravillas (*pro hac vice*)
Keller Postman
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: (312)741-5226

*Counsel for Plaintiffs*